**In the Matter of MACON PRE-STRESSED CONCRETE CO., a/k/a MPC, Debtor.**

**Bankruptcy No. 84–50896.**

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

May 15, 1986.

Jerome L. Kaplan and Ward Stone, Jr. of Arnall Golden & Gregory, Macon, Ga., for debtor.

James L. Shores, Jr. of Shores & Booker, Birmingham, Ala., for R. Wayne Duke.

Timothy K. Adams of Jones, Cork & Miller, Macon, Ga., for Trust Co. Bank of Middle Georgia, N.A.

Walter H. Bush of Hansell & Post, Macon, Ga., for Unsecured Creditors' Committee.

John T. McGoldrick, Jr. of Martin, Snow, Grant & Napier, Macon, Ga., for Heaton Erectors, Seabolt Transport, Inc., and Holox.

George M. Geeslin of Norton, Pennington, Goetz & Cronkright, Atlanta, Ga., for Burke Company.

ROBERT F. HERSHNER, Jr., Bankruptcy Judge.

## STATEMENT OF THE CASE

On August 24, 1984, Macon Prestressed Concrete Co., a/k/a MPC, Debtor, filed its petition with this Court under Chapter 11 of the Bankruptcy Code. A committee of unsecured creditors (Creditors' Committee) was appointed by the Court on September 4, 1984. On February 28, 1986, R. Wayne Duke (Movant), an unsecured creditor of Debtor, filed a "Motion for Conversion to Chapter 7." Notices of Movant's motion to convert were mailed to all parties in interest, and six objections to the motion to convert were received. On April 16, 1986, Movant filed a "Motion to Strike Objections."

The motions came on for hearing on April 16, 1986, and the Court, having considered the motion to convert, the objections thereto, the motion to strike objections, and the oral motion to have a trustee appointed, now publishes its findings of fact and conclusions of law.

## FINDINGS OF FACT

Debtor manufactures prestressed concrete which is used primarily in the construction of parking garages. Debtor's Chapter 11 case has been pending in this Court for approximately two years. At the time Debtor filed its petition, it operated four plants and employed approximately 435 people. The backlog of work from this operation was $3,000,000, and the production capacity of the four-plant operation was between $22,000,000 and $25,000,000 on an annual basis. During the two years since Debtor filed its petition, it has sold two of the four plants and reduced the number of its employees to approximately 305 people. The backlog of work has risen to $15,000,000, and the production capacity of the two-plant operation is between $18,000,000 and $22,000,000 per year. The officers of Debtor continue to receive the same salary that they were receiving at the time the bankruptcy petition was filed. Mr. William Boswell, president of Debtor, testified that the present market conditions are favorable for the prestressed concrete industry and that the new contracts entered into by Debtor are at higher prices than the prebankruptcy contracts.

Mr. James Taylor, the certified public accountant for the Creditors' Committee, testified that Debtor suffered a loss of $700,000 in 1984 and that Debtor also suffered a loss in 1985. A portion of the losses resulted from the closing of the plants and from Chapter 11 expenses.[1] From the financial information he had gathered, Mr. Taylor testified that Debtor is generating revenues and is paying its bills as they accrue. The Trust Company Bank of Middle Georgia, N.A., (Trust Company Bank) is Debtor's major secured creditor. Debtor has reduced its debt to Trust Company Bank from $1,500,000 to approximately $900,000. In Mr. Taylor's opinion, Debtor is currently breaking even, but will have problems if working capital gets tight because Debtor has no borrowing capacity.

From the undisputed testimony presented at the hearing, Debtor's only major unencumbered asset that could be applied to the debts that Debtor owes to unsecured creditors is its accounts receivable. The testimony establishes that there is a good expectation of collecting the accounts receivable as long as the Chapter 11 case is pending, but if the case is converted to Chapter 7 then there is a substantial likelihood that Debtor's bankruptcy estate will have difficulty in collecting on a substantial portion of the accounts. As an asset, Debtor also owns stock in Southeastern Porcelain & Construction Company, Inc., but in Mr. Taylor's opinion, the value of the stock is minimal because it is presently the subject of litigation going on between Debtor and Movant. Debtor also owns fifty acres of real estate adjacent to its plant in Forest Park, Georgia, but the real estate is subject to a mortgage.

As of the date of the hearing on Movant's motions, no plan of reorganization had been filed by Debtor. Before proposing a plan, the officers of Debtor stated that they hoped first to stabilize the business and then see what could be accomplished by liquidating a portion of the business. Debtor currently has entered into a contract to sell one of its plants as an ongoing business. The contract will go into effect on June 31, 1986, if the Court approves the contract. Debtor has also entered into a contract to sell the 50 acres of real estate in Forest Park, Georgia, for $10,000 an acre, for a total sales price of $500,000. The sale of the real estate is contingent on approval by the Court.

Movant is the only creditor who urges that Debtor's case be converted from Chapter 11 to Chapter 7. Four unsecured creditors filed written objections to Movant's

---

1. Debtor's estate incurs Chapter 11 expenses of approximately $10,000 to $15,000 per month.

motion to convert prior to March 26, 1986, the date set for filing objections pursuant to the notice mailed by this Court's Clerk's Office.[2] The Court, at the April 16, 1986, hearing on Movant's motion, allowed Debtor and Trust Company Bank to be heard despite the fact that they filed their written objections to the motion after March 26, 1986.[3] All creditors who participated in the hearing other than Movant state that if the unsecured creditors are to receive any payment on their claims, it will be necessary for the Court to allow Debtor to proceed under Chapter 11.

## CONCLUSIONS OF LAW

■ Before the Court addresses the issue of whether the motion to convert should be granted, the Court will first address Movant's contention that only timely filed written objections to the motion should be heard by the Court. Movant contends that any objections to his motion not in writing and filed with the Court by March 26, 1986, are untimely and barred pursuant to the "Notice of Motion of Creditor to Convert to Chapter 7" mailed by the Clerk's Office. As authority for his contention, Movant cites the wording of the notice itself. From the wording of the notice, it would appear that a party wishing to object to the motion must have filed a written objection with the Court before 5:00 p.m. on March 26, 1986. No judge of this United States Bankruptcy Court, however, entered an order or requested the Clerk's Office to send out a notice requiring parties to file written objections with the Court by March 26, 1986. The Clerk's Office sent out the notice pursuant to

Bankruptcy Rule 1017(d)[4] and Bankruptcy Rule 9014,[5] and set the filing deadline in the notice on its own initiative. The Court notes that Movant's counsel also did not request that objections to the motion be filed in writing by March 26, 1986. Four written objections were timely filed in response to Movant's motion. Because these objections were filed, the Court finds that Movant had notice that his motion was contested and that he would have the burden of proof to show cause for conversion, as required by section 1112(b). For this reason, the Court concludes that Movant suffered no real prejudice when Debtor and Trust Company Bank were allowed to object after the March 26, 1986, deadline. The Court notes that Movant was unable to point to any actual prejudice that resulted from the Court's allowing all interested parties to participate.

Furthermore, the Court is of the opinion that the magnitude of the issue presented to the Court requires that all affected parties be heard. A conversion of Debtor's case from Chapter 11 to Chapter 7 will have a great impact on Debtor's estate and on Debtor's creditors. Section 1112(b) specifically requires the Court to determine what is in the best interest of the creditors and the estate in deciding whether a Chapter 11 case should be converted or dismissed. The Court is persuaded that in the interest of justice, it must hear from all of the parties in interest who were present at the hearing in order to determine what is in the best interest of the creditors and the estate.

---

**2.** The notice, dated March 6, 1986, states:

YOU ARE HEREBY NOTIFIED that if any party wishes to object to the above motion, he must do so in writing, file the original with the Court, and further must serve a copy of such written objection upon the attorney for said creditor, Mr. James L. Shores, 2157 14th Avenue South, Birmingham, Alabama 35205, no later than 5:00 p.m. on the 26th day of March, 1986. If no timely written objection is filed, the Court may approve said motion.

YOU ARE FURTHER NOTIFIED that a hearing will be held ... at which time the Court will hear the objections to said motion,

if any, and will determine whether or not the requested action will be allowed.

. . . .

FOR THE COURT

. . . .

Deputy Clerk

**3.** Debtor filed its objection on April 2, 1986, and the Trust Company Bank filed its objection on April 11, 1986.

**4.** R.Bankr.P. 1017(d).

**5.** R.Bankr.P. 9014.

The Court now turns to the issue of whether Movant's motion to convert Debtor's case from Chapter 11 to Chapter 7 should be granted. Movant bases his motion to convert on section 1112(b) of the Bankruptcy Code,[6] which provides:

(b) Except as provided in subsection (c) of this section, on request of a party in interest, and after notice and a hearing, *the court may convert* a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the *best interest of creditors and the estate, for cause,* including—

(1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;

(2) inability to effectuate a plan;

(3) unreasonable delay by the debtor that is prejudicial to creditors;

(4) failure to propose a plan under section 1121 of this title within any time fixed by the court;

(5) denial of confirmation of every proposed plan and denial of additional time for filing another plan or a modification of a plan;

(6) revocation of an order of confirmation under section 1144 of this title, and denial of confirmation of another plan or a modified plan under section 1129 of this title;

(7) inability to effectuate substantial consummation of a confirmed plan;

(8) material default by the debtor with respect to a confirmed plan; and

(9) termination of a plan by reason of the occurrence of a condition specified in the plan.

11 U.S.C.A. § 1112(b) (West 1979) (emphasis added).

▉▉▉ Under this section, the Court is faced with a balancing of equities. Congress has determined that it is better to reorganize a business when possible, particularly when it is in the best interest of creditors. *Fisher v. City of Huntington Beach (In re The Huntington Ltd.),* 654

F.2d 578, 589 (9th Cir.1981); *In re Sheehan,* 14 Bankr.Ct.Dec. 36, 37 (Bankr.S.D. 1986); *International Horizons, Inc. v. Western Publishing Co. (In re International Horizons, Inc.),* 15 Bankr. 798, 800, 8 Bankr.Ct.Dec. 510, 511, 5 Collier Bankr. Cas.2d 849, 851 (Bankr.N.D.Ga.1981). "A Court should not precipitously sound the death knell for a debtor by prematurely determining that the debtor's prospects for economic revival are poor." *First National Bank of McDonough v. Shockley Forest Industries, Inc. (In re Shockley Forest Industries, Inc.),* 5 Bankr. 160, 162, 6 Bankr.Ct.Dec. 642, 643, 2 Collier Bankr. Cas.2d 756, 758 (Bankr.N.D.Ga.1980). The Court, therefore, should resolve all doubts in favor of the debtor. *See generally In re Pied Piper Casuals, Inc.,* 40 Bankr. 723, 727 (Bankr.S.D.N.Y.1984); *In re Heatron, Inc.,* 6 Bankr. 493, 496, 6 Bankr.Ct.Dec. 1008, 1010–11 (Bankr.W.D.Mo.1980). On the other hand, the Court must consider the interests of the creditors. If it is apparent that the debtor has no profitable core around which to structure a plan of reorganization, if the debtor is faced with continuing losses, and if the debtor's assets are declining in value, the best interests of the creditors may require the court to order liquidation of the debtor's estate under Chapter 7. *See* 5 Collier on Bankruptcy ¶ 1112.03[d][ii] (15th ed. 1985). In sum, the debtor should be given a fair opportunity to reorganize, but the debtor should not be permitted to continue in a futile effort to reorganize. *In re Tru-Stone, Inc.,* No. 83–30253–Ath, slip op. at 9 (Bankr.M.D.Ga. Dec. 2, 1983).

The burden to establish cause for conversion under section 1112(b) is on the party seeking such relief. *See In re Photo Promotion Associates, Inc.,* 47 Bankr. 454, 458, 12 Bankr.Ct.Dec. 1121, 1123 (Bankr.S. D.N.Y.1985); *In re Economy Cab & Tool Co.,* 44 Bankr. 721, 724 (Bankr.Minn.1984); *In re Earth Services, Inc.,* 27 Bankr. 698, 700 (Bankr.Vt.1983); *In re Karl A. Neise, Inc.,* 16 Bankr. 602, 603 (Bankr.S.D.Fla. 1981); 5 Collier on Bankruptcy ¶ 1112.03[a]

---

**6.** 11 U.S.C.A. § 1112(b) (West 1979).

(15th ed. 1985). As the party seeking such relief, Movant, therefore, has the burden of proof.

In his motion, Movant asserts that Debtor's case should be converted because Debtor has incurred continuing operating losses, there has been a postpetition diminution of the estate, there is no realistic prospect for rehabilitation of Debtor, and there has been an unreasonable and prejudicial delay in the filing of a plan of reorganization.[7] For the following reasons, the Court concludes that Movant has not carried his burden, and the Court is persuaded that conversion would not be in the best interests of the creditors and the estate.[8]

■ In Movant's motion, he alleges cause for conversion under section 1112(b)(1). In order to establish cause for conversion under section 1112(b)(1), Movant must not only show a continuing operating loss or diminution of the estate, but he must also show an absence of a reasonable likelihood of rehabilitation. *In re Photo Promotion Associates, Inc.*, 47 Bankr. at 458, 12 Bankr.Ct.Dec. at 1124; *In re Powell Brothers Ice Co.*, 37 Bankr. 104, 107, 10 Collier Bankr.Cas.2d 328, 330–31 (Bankr. Kan.1984); *In re Steak Loft of Oakdale, Inc.*, 10 Bankr. 182, 185, 7 Bankr.Ct.Dec. 524, 526, 4 Collier Bankr.Cas.2d 45, 49 (Bankr.E.D.N.Y.1981). *See generally* 5 Collier on Bankruptcy ¶ 1112.03[d][i] (15th ed. 1985). The testimony presented at the hearing reveals that Debtor's estate suffered losses in 1984 and 1985. Mr. Taylor testified that Debtor is currently breaking even, but it is difficult to predict at this time whether Debtor will make a profit or loss this year. Debtor is generating revenue and paying bills as they accrue.

While Debtor may be suffering a loss, the Court is persuaded that from the evidence presented at the hearing, there is a reasonable likelihood of rehabilitation. The actions taken by Debtor during the time since it filed its Chapter 11 case demonstrate this. Debtor has sold two plants and reduced the number of its employees while at the same time not reducing its production capacity.[9] Debtor also has increased its backlog of work from $3,000,000 to $15,000,000. The market conditions are favorable for this type of industry and the contracts Debtor is entering into at this time are at higher prices than those entered into before bankruptcy. Based upon these factors, the Court concludes that there is a reasonable likelihood that Debtor can rehabilitate and that Movant has not sufficiently shown otherwise. *See In re Sheehan*, 14 Bankr.Ct.Dec. at 37; *In re Garland Corp.*, 6 Bankr. 456, 460 (Bankr. 1st Cir. 1980); *In re Burnside, Lee & Harris Diamond Co.*, 17 Bankr. 104, 106 (Bankr.M.D. Fla.1981).

■ As a second ground for conversion, Movant alleges cause under section 1112(b)(3). Under section 1112(b)(3), a moving party must show unreasonable delay by the debtor that has resulted in prejudice to the creditors. 11 U.S.C.A. § 1112(b)(3) (West 1979). Whether the two-year period which has passed without Debtor filing a plan constitutes an unreasonable delay prejudicial to the creditors is a question which must be considered in the context of Debtor's case. *Cf. In re Sheehan*, 14 Bankr.Ct.Dec. at 38. Debtor gave two rea-

---

7. *See* 11 U.S.C.A. § 1112(b)(1), (3) (West 1979). While Movant did not specifically refer to section 1112(b)(1) and (3), the Court finds that Movant's assertions, as set forth in his motion, fall within this section.

8. What might constitute cause for dismissing a Chapter 11 case is a matter of judicial discretion to be determined upon consideration of the circumstances of each case. The legislative history of Section 1112(b) indicates that the court is to be given wide discretion to make an appropriate disposition of the case, including consideration of facts not specifical-

ly listed. H.R.Rep. No. 595, 95th Cong., 1st Sess. 405 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 117 (1978), *reprinted in* 1978 U.S. Code Cong. & Ad.News 5787. The legislative history also indicates that the court may use its equitable powers to reach an appropriate result in individual cases. *Id.*
*In re Sheehan*, 14 Bankr.Ct.Dec. at 37.

9. Debtor's four-plant production capacity was between $22,000,000 and $25,000,000. Its two-plant production capacity is between $18,000,000 and $22,000,000.

sons for its delay in filing a plan. One reason for the delay was the need to stabilize its business operations. Debtor has worked diligently to consolidate and streamline its operations during the two-year postpetition period to rid itself of assets and their corresponding liabilities that are not essential to Debtor's continued operation. Debtor now contends that it is in the position to formulate a manageable and viable plan. The other reason Debtor gave for the delay is that Debtor hopes to liquidate various other aspects of its operations such as another plant and the real estate in Forest Park, Georgia. The testimony shows that Debtor has been negotiating the sale of the third plant for months and now has a final contract of purchase contingent upon approval by the Court. Debtor also has a contract for the sale of the real estate. Debtor asserts that before it could formulate a realistic plan of reorganization, time was needed to see what the outcome of these negotiations would be.

Considering Debtor's reasons for delay, the Court is persuaded that the delay in this case is not unreasonable. "The intent of the Code is to give a debtor breathing space in which to concentrate his efforts on reorganization." *In re Sheehan,* 14 Bankr. Ct.Dec. at 38. "In certain cases, a debtor will have several profitable divisions and will undertake to dispose of the unprofitable portion of its business in order to successfully reorganize. In such a case, the debtor should be afforded a reasonable period of time to liquidate th[at] portion of its business...." 5 Collier on Bankruptcy ¶ 1112.03[d][i] (15th ed. 1985). Debtor has not abused Chapter 11, but has worked diligently to put itself into a position to formulate a realistic and manageable plan of reorganization. The Court concludes that in light of its progress, the delay by Debtor has not been prejudicial to the creditors.

■ The Court finds that upon the basis of the evidence presented at the hearing, Movant has failed to show cause for conversion as required by section 1112(b). Movant is the only creditor who seeks to convert Debtor's case.[10] The Creditors' Committee and the other participating creditors all oppose Movant's motion, asserting that it is in their best interests for Debtor's case to continue under Chapter 11. The creditors point out that the only substantial unencumbered asset Debtor has is Debtor's accounts receivable. If the case is converted, the chance of collection on these accounts will be substantially reduced, and the unsecured creditors will most likely receive nothing from Debtor's estate. If, however, the case is not converted, then Debtor can collect on these accounts, and the unsecured creditors will most likely receive some payment on their claims. The Court notes that Debtor has reduced its indebtedness to its major secured creditor by approximately $600,000, thereby potentially freeing other assets for payment on the unsecured creditors' claims. The Court is persuaded that it is in the best interest of the unsecured creditors and the estate for the Court to deny Movant's motion to convert.

■ The final issue for the Court to address is whether a trustee should be appointed in this case as moved for by Movant at the April 16, 1986, hearing. Section 1104(a) of the Bankruptcy Code[11] provides that:

(a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest, and after notice and a hearing, the court shall order the appointment of a trustee—

(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debt-

---

**10.** The Court notes that Movant and Debtor are currently engaged in litigation over the sale of the Southeastern Porcelain & Construction Company, Inc. stock, which involves approximately $1,800,000. Movant filed suit against Debtor alleging that Debtor defaulted on its

obligations under their purchase agreement. Debtor counterclaimed, alleging that Movant's claim should be disallowed in its entirety.

**11.** 11 U.S.C.A. § 1104(a) (West 1979).

or by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or

(2) if such appointment is in the interest of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

11 U.S.C.A. § 1104(a) (West 1979). As the party requesting appointment of a trustee, Movant has the burden of proof. *In re Sea Queen Kontaratos Lines, Ltd.,* 10 Bankr. 609, 610, 7 Bankr.Ct.Dec. 601, 602, 4 Collier Bankr.Cas.2d 491, 493 (Bankr.Me.1981). *See* 5 Collier on Bankruptcy ¶ 1104.01[b] (15th ed. 1985). Absent a showing of need for the appointment of a trustee, there is a strong presumption that the debtor should be permitted to remain in possession. *In re Deena Packaging Industries, Inc.,* 29 Bankr. 705, 706–07, 10 Bankr.Ct.Dec. 603, 604 (Bankr.S.D.N.Y.1983); *In re Sea Queen Kontaratos,* 10 Bankr. at 609, 7 Bankr.Ct.Dec. at 602, 4 Collier Bankr. Cas.2d at 493; *In re Eichorn,* 5 Bankr. 755, 757, 6 Bankr.Ct.Dec. 995, 996 (Bankr. Mass.1980). Otherwise, the appointment of a trustee would impose a substantial financial burden on a debtor's estate, thus precluding an effective reorganization due to increased administrative expenses. *In re Tyler,* 18 Bankr. 574, 578, 8 Bankr.Ct.Dec. 1302, 1305 (Bankr.S.D.Fla.1982); *In re Eichorn,* 5 Bankr. at 758, 6 Bankr.Ct.Dec. at 997. In this case, Movant has presented no evidence to show cause for the appointment of a trustee.