**In re Linwood SMITH and Isabell Smith, Debtors.**

**In re INTERNATIONAL ENDOSCOPE MANUFACTURERS, INC., Debtor.**

**Bankruptcy Nos. 82–02272K, 85–01033K.**

United States Bankruptcy Court, E.D. Pennsylvania.

Sept. 3, 1987.

C. Richard Morton, West Chester, Pa., for the Shihadehs.

Geoffrey L. Steiert, Collingswood, N.J., Gary M. Schildhorn, Philadelphia, Pa., for debtors.

David L. Pollack, David I. Grunfeld, Philadelphia, Pa., for Dr. James A. Harrington.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

We are herein considering together Motions filed under 11 U.S.C. § 1112(b) in these separate and quite distinct bankruptcy cases because the legal issues which they present are quite similar, and when considered together, they illustrate the parameters of the considerations which we believe that we must make in deciding such Motions. We believe that, generally, the moving party has a significant burden in prosecuting such motions. We are very reluctant to read a broad application of the concept of "good faith" into this Code section. We favor dismissal to conversion, as the latter transforms a voluntary case into a semi-involuntary one. However, taking very seriously the charge in *In re Timbers of Inwood Forest Associates, Inc.*, 808 F.2d 363, 371-72 (5th Cir.1987) (en banc), that we must offset a relatively permissive cash collateral policy with an active use of § 1112(b), we are inclined to utilize this section with particular force to dismiss or convert cases in which there has been unreasonable delay in effecting a plan. Both of these cases present situations where delay which we would ordinarily consider unreasonable has occurred. In both cases, the justification presented for delay includes a claim that preparation of a plan must await the outcome of litigation. In *Smith*, we proceed to dismiss the case, because the pending litigation was unreasonably delayed and the explanations for the delay are unconvincing. In *International Endoscope*, we find the explanation sufficient, at least for the present. Thus, we shall grant the motion to dismiss the *Smith* case, but deny the Motion to convert the *International Endoscope* case.

Both of these cases present cases in which a Chapter 11 plan has never been presented, nor was a plan ordered to be filed within a certain time-frame. There-

fore, at issue are 11 U.S.C. §§ 1112(b)(1), (2), and (3), which provide as follows:

(b) Except as provided in subsection (c) of this section, on request of a party in interest or the United States trustee, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including—

(1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;

(2) inability to effectuate a plan;

(3) unreasonable delay by the debtor that is prejudicial to creditors; ...

*Smith* was filed by a married couple under Chapter 13 of the Code on May 20, 1982. A Chapter 13 Plan was filed June 18, 1982. However, the matter never proceeded to a meeting pursuant to 11 U.S.C. § 341, and the docket indicates no filings whatsoever between July 12, 1982, and January 15, 1985, at which time the Standing Chapter 13 Trustee filed a Motion to Dismiss the case. After it was dismissed on May 9, 1985, the Debtors, on May 21, 1985, filed a Motion to reconsider this Order in order that the case could be vacated and the case converted to Chapter 11, which was granted on June 18, 1985. Another period of complete docketing silence transpired thereafter until February 17, 1987, when the Debtors filed an Application to be excused from filing Operating Statements, which they had never in fact filed previously in any event.

On April 17, 1987, parties whom we are advised are assignees of the second mortgage on a commercial tavern property owned by the Debtors in Stowe, Montgomery County, Pennsylvania, DAVID and MOUSA SHIHADEH (hereinafter "the Shihadehs"), filed the instant Motion to Dismiss, citing as grounds, 11 U.S.C. §§ 1112(b)(1), (2), (3); the past failure to file operating statements; and lack of good faith. The Shihadehs alleged that a foreclosure, scheduled for a sheriff sale at the

time of the bankruptcy filing, had been delayed for five years by the bankruptcy.

Thereafter, on May 21, 1987, the Debtors instituted an Adversary proceeding against Penn Finance Corporation (hereainafter referred to as "Penn"), and L.A. Rob, Inc. (hereinafter referred to as "Rob"), at Adv. No. 87–0481, contending that Penn, the assignee of the first mortgage, had breached an agreement to assist them in selling the Stowe property and the liquor license conjunctive thereto, and had improperly allowed Rob, initially installed temporarily as a prospective purchaser, to "rob" the Debtors as a more or less permanent tenant in the premises even after its sale proposal fell through, without paying or accounting to the Debtors for the rents. Although scheduled for trial on July 1, 1987, this Adversary proceeding was continued by request of counsel until September 15, 1987.

On July 2, 1987, the Motion in issue here came before us for a hearing. The parties stipulated that the entire case record; a batch of correspondence, most of it vintage 1982 to 1984 correspondence between the Debtors' counsel and the Shihadehs' counsel and Penn; applications for liquor licenses through the present; and a listing agreement of June 17, 1987, of the Stowe property with a realtor, could constitute the record for the Motion. By Order of July 2, 1987, we allowed the Shihadehs and the Debtors an opportunity to file Briefs on or before August 3, 1987, and August 24, 1987, respectively. After the Shihadehs submitted their Brief in timely fashion, the Debtors filed a 39–page opus on August 28, 1987, in accordance with an enlargement of time to do so. The basic argument of the Debtors was that they could not realistically formulate a plan until the Adversary proceeding had been litigated, although they raised other arguments discussed at p. 503 *infra*.

*International Endoscope* has a shorter but far more active history. The case was filed as a voluntary Chapter 11 matter on March 22, 1985. From the outset, it became clear that the centerpiece of this case was litigation involving, on one hand, the corporation, by its former President, Wal-

ter Brittle, and, on the other hand, a scientist whose employment was separated from the corporation under hotly-disputed circumstances on January 29, 1985, Dr. James A. Harrington (hereinafter referred to as "Harrington"), the party who filed the instant Motion to Dismiss.

On June 19, 1985, the Debtor filed an adversary proceeding at Adversary No. 85–0528, seeking preliminary and permanent injunctive relief against Harrington for alleged violations of an anti-competition clause in Harrington's employment contract. After a hearing stretching over six days between July 10, 1985, and September 5, 1985, this Court, per our predecessor, the Honorable William A. King, Jr., entered a preliminary injunction against Harrington on February 12, 1986. However, on appeal, the District Court, per Chief Judge John P. Fullam, stayed the injunction on March 7, 1986, and, on October 9, 1986, issued a lengthy but unpublished Memorandum and Order reversing Judge King's injunction Order on the ground that the Debtor had not followed proper procedures set forth in the contract in invoking the restrictive covenant clause and had not identified any trade secrets allegedly misappropriated by Harrington.

Believing that the long pendency of this proceeding rendered the injunctive relief originally sought therein moot, the Debtor, on March 20, 1987, instituted four new actions for monetary relief, two of which were Adversary proceeding against Harrington's subsequent employers and Harrington himself, at Adversary Nos. 87–0259 and 87–0258, respectively, in this Court, and two of which were instituted in California federal and state courts against Harrington and the subsequent employers, respectively. On June 9, 1987, Judge Fullam entered an Order withdrawing the reference of the two proceedings instituted in our Court and consolidating them for trial. No trial has yet been conducted.

On April 8, 1987, we granted an Order permitting Harrington to take an Examination of the Debtor, in the person of Brittle, pursuant to Bankruptcy Rule (hereinafter referred to as "B.Rule") 2004. Shortly

thereafter, on April 10, 1987, Harrington filed the instant Motion to Convert this matter to a Chapter 7 proceeding.

■ The matter came before us for trial on July 16, 1987. At the outset, we denied a Motion by Harrington to place the entire four-volume 2004 Examination into the record as his case.[1] Harrington then called Brittle as his sole witness. The Debtor, in addition to examining Brittle, adduced brief testimony from Daniel Pierson, II, Esquire, who stated that he was prepared to represent the Debtor in several of the outstanding legal proceedings. At the close of the hearing, which carried over to July 21, 1987, we granted the parties an opportunity to file Briefs on or before July 31, 1987 (Harrington), and August 14, 1987 (Debtor), which arrived after a brief extension to the Debtor.

Harrington submitted a 30–page opus, arguing that his Motion should be granted on almost the same grounds as those that were invoked by the Shihadehs: §§ 1112(b)(1), (2), (3); lack of good faith; and purported violations of court rules. The basic response of the Debtor was that, while it had been active since Harrington's departure, and planned to liquidate in any event, it could not formulate a Plan while the litigation against Harrington remained unresolved. Harrington's principal counterresponse appeared to be that an "independent Chapter 7 Trustee" should evaluate the allegedly meritless litigation which the Debtor's counsel was maintaining against him. The Debtor responded with the contention that Harrington was simply attempting to get the Debtor's chosen counsel off the case as a defensive tactic.

Therefore, the Motions in these two cases, while applied to very diverse factual situations, are at core similar in the legal issues which they raise concerning the proper application of 11 U.S.C. § 1112(b).

In deciding § 1112(b) Mctions, the Court is faced with a balancing of equities. Congress has determined that it is better to reorganize than terminate a business when possible, particularly when it is in the best interest of creditors to reorganize. *See In re Macon Prestressed Concrete Co.*, 61 B.R. 432, 436 (Bankr.Ga.1986), and cases cited therein. Therefore, a Court should not precipitously sound the death knell for a debtor by prematurely determining that the debtor's prospects for economic revival are poor. *In re Shockley Forest Industries, Inc.*, 5 B.R. 160, 162 (Bankr.N.D.Ga. 1980). Thus, a court should resolve doubts in favor of the debtor in deciding a § 1112(b) Motion. *Macon Concrete, supra*, 61 B.R. at 436 (citing *In re Pied Piper Casuals, Inc.*, 40 B.R. 723, 727 (Bankr.S.D. N.Y.1984); and *In re Heatron, Inc.*, 6 B.R. 493, 496 (Bankr.W.D.Mo.1980)). Further, the burden of proof in such a motion is squarely upon the moving party. *See, e.g., In re D & F Meat Corp.*, 68 B.R. 39, 40 (Bankr.S.D.N.Y.1986).

On the other hand, the Court must consider the interests of the creditors. If it is apparent that the debtor has unreasonably delayed in presenting a feasible plan, the best interests of the creditors require the court to order dismissal of the case or liquidation of the debtor's estate under Chapter 7 rather than prolong the agony and heighten the ultimate losses to the creditors. *See* 5 COLLIER ON BANK-

---

1. In his Brief, Harrington continues to argue that this ruling was incorrect pursuant to B.Rules 9014, 7032, and Federal Rule of Civil Procedure (hereinafter referred to as "F.R.Civ. P.") 32(a)(2). However, we note that a B.Rule 2004 Examination is not a Deposition, and that, in the absence of an invocation of F.R.Civ.P. 32, "[u]nquestionably, the general rule is that the pretrial deposition of a witness on the stand is not admissible as substantive evidence." *Community Counselling Service, Inc. v. Reilly*, 317 F.2d 239, 243 (4th Cir.1963). Hence, we cannot append F.R.Civ.P. 32(a)(2) to B.Rule 2004 and allow materials from a 2004 Examination to constitute the record. We also note that exclusion of deposition evidence is discretional in the sense that it can be refused if the party seeking to use it does not limit a lengthy deposition to the relevant portions, *King & King Enterprises v. Chaplin Petroleum Co.*, 657 F.2d 1147, 1164 (10th Cir.1981); and *Zimmerman v. Safeway Stores, Inc.*, 410 F.2d 1041, 1044–45 n. 5 (D.C. Cir.1969), or if the deposition material is covered or could have been covered at trial. *Crimm v. Missouri P.R. Co.*, 750 F.2d 703, 709 (8th Cir.1984). Harrington declined our request to reduce the Deposition materials to a manageable quantity and Brittle was available to testify.

RUPTCY, ¶ 1112.03[d][ii], at 1112–16 to 1112–19. (15th ed. 1987).

Section 1112(b) gives wide discretion to the court to make an appropriate disposition of the case when a party in interest requests dismissal or conversion. H.R. REP. NO. 595, 95th Cong., 1st Sess. 405–06 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6361, 6362. The court can act in the best interest of creditors through conversion or dismissal only for "cause." However, the court is not required to give exhaustive reasons for its decision. *In re Koerner*, 800 F.2d 1358, 1368 (5th Cir. 1986).

The language of Section 1112(b) includes a list of possible circumstances which would satisfy the requirement of cause, e.g., §§ 1112(b)(1) through (b)(10). However, the list is not meant to be exhaustive. The court is allowed to consider other factors as they arise, and to use its equitable powers to reach appropriate results in individual cases. H.R.REP., *supra*, at *id.*

As we indicated at the outset of our Opinion, we are very sensitive to the admonitions in *Timbers, supra*, that "[t]he charge to the bankruptcy judge under § 1112, ... is to evaluate each debtor's viability and rate of progress in light of the best interest of creditors and the estate," 808 F.2d, at 372, especially since we have embraced the view of the *Timbers* court regarding the issue of whether a partially-secured creditor is entitled to compensation for the delay in enforcing its rights in the interim between the filing of the petition and the confirmation of a plan. *See In re Cann & Saul Steel Co.*, 76 B.R. 479, 485 and *In re Grant Broadcasting of Philadelphia, Inc.*, 71 B.R. 376, 388–89 (Bankr.E.D. Pa.1987), *aff'd*, 75 B.R. 819 (E.D.Pa.1987). Hence, "[w]e intend to grant 1112(b) Motions in cases which have been dormant too long." *Cann & Saul, supra*, At 487.

As in most of the reported cases involving § 1112(b) Motions, the moving parties level a scatter-gun attack invoking every applicable § 1112(b) subsection, violations of a variety of court rules, and lack of "good faith." While we will briefly address most of the grounds asserted, we will focus our comments upon the issue of delay, which could be said to constitute the substantive penumbra embracing §§ 1112(b)(1), (2), and (3), and of whether the Debtors' pending litigation justifies the delays in issue.

Initially, we address the issue of "good faith," the accusations and denials of which constitute a good part of the Briefs presented to us in both cases. We agree, in large part, with the narrow application of "good faith" as an unstated but implicit basis for dismissal lurking between the lines of § 1112(b) set forth by Judge Fox of this Court in *In re Clinton Centrifuge, Inc.*, 72 B.R. 900, 903–08 (Bankr.E.D.Pa. 1987). Like Judge Fox, we totally reject the ever-increasing laundry-list approach to ascertainment of what may constitute less than "good faith," *id.* at 905, and we agree that "good faith" is no broader than the *Clinton* statement that

> in evaluating a debtor's good faith, the court's only inquiry is to determine whether the debtor seeks to abuse the bankruptcy law by employing it for a purpose for which it was not intended. When a debtor is motivated by plausible, legitimate reorganization (or liquidation) purposes and not solely or predominantly by the mere desire to prevent foreclosure or hinder creditors, bad faith is not present in a chapter 11 case. *Id.*

In fact, in our following holding in *In re Gathright*, 67 B.R. 384, 387–88 (Bankr.E.D. Pa.1986), *appeal dismissed*, 71 B.R. 343 (E.D.Pa.1987), addressing the "good faith" requirement set forth in 11 U.S.C. § 1325(a)(3), we posited an even more narrow application of this requirement than did Judge Fox in *Clinton Centrifuge*:

> With Collier, we believe that "[t]he phrase 'good faith' as it appears in section 1325(a)(3) is entitled to its historical meaning" in the predecessor Bankruptcy Act, i.e. as relating solely to "debtor misconduct [in the bankruptcy proceeding], such as fraudulent misrepresentations or serious nondisclosures of material facts." 5 COLLIER ON BANKRUPTCY, § 1325.04, at 1325–12, 1325–10 (15th

ed. 1986). We conclude that nothing more should be read into the meaning of this Code provision.

We find nothing in the Motions of either of the moving parties in these cases that we would classify as "fraudulent misrepresentations or serious nondisclosures of material facts." We also do not believe that the Debtors are guilty of "employing [bankruptcy] for a purpose for which it was not intended." We will not dismiss either of these cases through a process which analyzes the respective Debtors' motivations for filing any more deeply. We cannot close the doors of the court to debtors who appear to be utilizing bankruptcy to stop sheriff's sales and to invoke the medium of a pragmatic and fast-moving forum. Thus, we might wish that Brittle and Harrington took their fight elsewhere, but we will not evict them from our doors as long as the Debtor can justify its presence here.

Secondly, we note our preference for dismissal of a case instead of conversion to Chapter 7. When a Chapter 11 case is dismissed, the debtor has the option of whether to refile under Chapter 7 or not. We believe that it may be unfair to convert a voluntary Chapter 11 case into, effectively, an involuntary Chapter 7 case unless specific actions on the part of the Debtor warrant it. *Cf. In re Geller,* 74 B.R. 685, 689 (Bankr.E.D.Pa.1987) (in deciding whether to allow the debtor's attempt to voluntarily dismiss the case the court looked with certain disfavor upon the consideration that failure to allow dismissal effectively transforms a voluntary case into an involuntary one). A creditor moving to convert can always follow a dismissal with the filing of an involuntary petition if such a proceeding is deemed appropriate.

The movants in both cases cite to violations of court rules and alleged improper actions and activities by the respective Debtors as a basis for dismissal. We do not doubt that serious violations of a debtor's responsibilities to keep records or file necessary papers may lead to a dismissal. *See In re Wood,* 68 B.R. 613 (Bankr.D.Hawaii 1986) (disregard of several court orders and procedures); *In re Cohoes Industrial Terminal, Inc.,* 65 B.R. 918 (S.D.N.Y. 1986) (failure to properly file schedules, to file accurate monthly operating reports, *and* to obtain necessary insurance justifies dismissal); and *In re Baumgartner,* 57 B.R. 513 (Bankr.N.D.Ohio 1987) (failure to accurately disclose assets, to prepare proper reports, *and* to prepare monthly operating reports are grounds for dismissal). Chapter 11 debtors and Chapter 7 debtors engaging in business are required to file monthly operating statements, per Local Bankruptcy Rule 2015.1. Our Estate Administrators in the past and, presumably, the office of the United States Trustee in the future, has and will monitor this requirement, and this failure, in itself, may lead to dismissal.

However, belated filing of or belated requests for permission to be relieved of, filing operating statements, which is the principal rule-violation deficiency alleged on the part of the respective Debtors here, would be unlikely to serve, in itself, as a grounds for dismissal under § 1112(b). We do not have a sufficient record to support any serious misuse of assets or failures to meet reporting requirements in the *Smith* record such as would justify dismissal.

Similarly, rejecting Harrington's contentions, we do not find the management of the *International Endoscope* Debtor by Brittle in any way improper, and certainly not so improper as to justify dismissal of the case. It is not improper for Brittle to utilize the assets of the corporation principally to attempt to recoup damages from Harrington's alleged breaches of his obligations to the Debtor. The Debtor's causes of action against Harrington may indeed be its most valuable asset. Pursuit of this litigation appears to us to be a potentially sound judgment, and we note that only Harrington is protesting this action.

What we believe is more significant in the instant cases is the element of delay. We believe that consideration of the different criteria set forth in 11 U.S.C. §§ 1112(b)(1), (2), or (3) inevitably leads to an analysis of whether the debtor has,

without seemingly just reason, delayed too long in attempting to formulate a plan. The "likelihood of rehabilitation" criterion set forth in § 1112(b)(1) is largely a function of how long the debtor has been about trying to formulate a plan without success. There is no requirement that the plan contemplate reorganization, as a liquidating plan is an acceptable alternative in a Chapter 11 case, and thus a liquidation is a form of rehabilitation. *See, e.g., In re Greene,* 57 B.R. 272, 277 (Bankr.S.D.N.Y.1986); and *In re Alves Photo Service, Inc.,* 6 B.R. 690, 693 (Bankr.D.Mass.1980). *But see In re Tracey Service Co.,* 17 B.R. 405, 409 (Bankr.E.D.Pa.1982) (court impressed with fact that the Debtor was "at a standstill since 1980"). However, whether liquidation or reorganization is the goal, we believe that § 1112(b)(1) requires that the debtor accomplish its purpose within a reasonable time-frame.

Similarly, the § 1112(b)(2) criteria of "inability" to effectuate a plan also focuses, at bottom, on delay. A long delay in formulation of a plan bespeaks of an inability to do so.

Finally, § 1112(b)(3) expressly addresses the issue of delay. While it does require a delay which effects prejudice to creditors, a bankruptcy proceeding necessarily restricts the freedom of creditors and hence, in some sense, is prejudicial to creditors. Any unreasonable, excessive delay is unfairly prejudicial to creditors.

Several courts have dismissed cases, at least alternatively, on the basis of delays between filing of the Chapter 11 case and the prosecution of a dismissal motion, which were less than those in issue here. *See In re Bacon,* 52 B.R. 52, 53 (Bankr.N.D.Iowa 1985) (16 months); *In re Van-Brunt,* 46 B.R. 29, 30 (Bankr.W.D.Wis.1984) (2 years); *In re U.S. Truck Co.,* 44 B.R. 311, 321–22 (Bankr.E.D.Mich.1984) (2 years); *In re Clemmons,* 37 B.R. 712, 717 (Bankr.W.D.Mo.1984) (17 months); *In re CCN Realty Corp.,* 23 B.R. 261, 262–63 (Bankr.S.D.N.Y.1982) (10 months); *In re K.C. Marsh Co.,* 12 B.R. 401, 403 (Bankr.D.Mass.1981) (6 months); and *In re Larmar Estates, Inc.,* 6 B.R. 933, 935 (Bankr.E.D.

N.Y.1980) (7 months). *Cf. In re Sung Hi Lim,* 7 B.R. 316, 317–18 (Bankr.D.Hawaii 1980) (four months following Chapter XII case dismissed after 43 unsuccessful months); and *In re Eagson Corp.,* 1 B.R. 777 (Bankr.E.D.Pa.1980) (Chapter 11 proceeding dismissed because, although recently filed, a Chapter XI case delayed for three years was still pending).

Here, the delay of the *Smith* Debtors has been over five years since the case was filed and over two years (27 months) since the case was converted to Chapter 11. In *International Endoscope,* the period between the filing and the present is twenty-nine (29) months. Consistent with the foregoing cases, we believe that the delay has been excessive, and the respective Debtors can avoid dismissal only by a strong showing of a good reason why such a delay is justified.

The explanation of the *International Endoscope* Debtor is short and direct, in reply to Harrington's scatter-gun offensive. The litigation with Harrington is the corporation's principal remaining asset. The Debtor has pursued this litigation vigorously from the date of filing in a variety of forums. Most delays have occurred in the decision-making process. The Debtor further argues that it is wise to delay filing its plan until the outcome of these actions is known.

The principal authority cited by the Debtor in *International Endoscope* in support of its position is the decision of Judge King of this Court in *In re L.N. Scott Co.,* 13 B.R. 387, 388 (Bankr.E.D.Pa.1981), where a dismissal motion was denied because the Court found that "no plan can be formulated until [four pieces of] litigation [are] resolved." *Accord, In re I–5 Investors, Inc.,* 25 B.R. 346, 353 (Bankr.D.Ore.1982).

However, like any principle, the viability of the contention that the pendency of litigation tolls the filing of a plan depends upon the circumstances. A similar argument did not save the respective debtors in the following cases from dismissals: *In re Winshall Settler's Trust,* 758 F.2d 1136, 1137–38 (6th Cir.1985); *Wood, supra,* 68 B.R. at 616; and *In re Golden Ocala Part-*

*nership,* 50 B.R. 552, 557–58 (Bankr.M.D. Fla.1985).

Ultimately, what convinces us that the *International Endoscope* Motion must be denied is the hyprocrisy of the efforts of Harrington to convert this case to Chapter 7 simply to obtain the appointment of a Trustee and thus blunt the efforts of the opponent's counsel to litigate claims of the Debtor against him. Such an attempt to disassociate a debtor from chosen counsel by the opposing litigant is reminiscent of similar conduct with which we expressed distaste in *In re G & H Steel Service, Inc.,* 76 B.R. 508, 511, 512 (Bankr.E.D.Pa.1987). It is apparent that the Debtor's counsel is not foot-dragging in maintaining litigation against Harrington, but is in fact perceived by Harrington as doing so too vigorously.

Therefore, we shall deny Harrington's Motion, with, however, two caveats: (1) the Debtor must continue to expeditiously pursue the litigation in issue; and (2) if the litigation proceeds to take years instead of months, we do not intend to keep this case open infinitely.

Unfortunately for them, the explanation of the *Smith* Debtors is considerably less impressive than that of the Debtor in *International Endoscope.* There is a vague attempt to attack the obviously justified standing of the Shihadehs to file the Motion in issue and a totally erroneous contention, especially after the arrival date of the United States Trustee in this Court, August 21, 1987, has passed, that the Court could not do so *sua sponte. See* 11 U.S.C. § 105(a); *In re Daily Corp.,* 72 B.R. 489 (Bankr.E.D.Pa.1987) (Court had power to dismiss case *sua sponte* even prior to arrival date of United States Trustee and certainly thereafter).

There is citation of other cases which have been pending longer in this Court and the District of New Jersey without dismissal, and the vague implication that, if these cases have been allowed to languish, this case should be allowed to do so, too. This argument is totally specious.

There is an attempt to lay all of the blame on Penn for not responding to the Debtors' communications for over a year from late 1983 to early 1985. However, we would observe that Penn's refusal to communicate would have seemed to us to constitute a circumstance which would have *sparked* action, not encouraged waiting and delay.

Finally, the flurry of activity after the filing of the dismissal motion is pointed to as a reason to dissuade us from dismissal now, even though the only action taken by the Debtors in our presence on the Adversary proceeding thus far was to agree to continue it for almost three months. There is an unimpressive attempt to convince us that the Shihadehs' filing of their motion had no bearing on the filing of the Adversary proceeding, the Complaint was allegedly drafted in 1986, but allegedly could not be filed because certain information from Penn was lacking. All that the foregoing confirms to us is that the Debtors were utterly blase about the tremendous delays in prosecuting their case. Hence, despite considerable thrashing about to do so, the Debtors have convinced us that they have no acceptable explanation for the inordinate delays in prosecution of their case. Indeed, although they invoke an *L.N. Scott* -type argument, reminiscent of the *International Endoscope* debtor, they fail to cite *L.N. Scott* and their arguments tend to reveal the limitations of such an argument.

Indeed, so unimpressive is their response that we are not even inclined to give them one more chance. *Compare In re Economy Cab & Tool Co.,* 44 B.R. 721, 726 (Bankr.D.Minn.1984). Therefore, we will simply proceed to dismiss this case at this juncture.

Orders in each of these cases consistent with this Opinion shall issue.