**In re AUSTIN OCALA LIMITED, Debtor.**

**Bankruptcy No. 91–5926–BKC–3P1.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Feb. 1, 1993.

Joel S. Treuhaft, Tampa, FL, for debtor.

Douglas P. McClurg, Hill, Ward & Henderson, Tampa, FL, for movant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This case came before the Court on Motion to Dismiss or Convert filed by NationsBank of Florida, N.A. ("NationsBank").[1] A hearing on the motion was held on August 4, 1992. Upon the evidence presented, the Court makes the following Findings of Fact and Conclusions of Law:

### Findings of Fact

Austin Ocala Limited is a Florida limited partnership which owns the real and personal property comprising the Howard Johnson's Park Square Inn located in Ocala, Florida (the "Hotel"). Debtor's sole business activity is the ownership of the Hotel, which is managed by a third party.

In December of 1987, NationsBank lent $6,500,000.00 to debtor, secured by a mortgage on the Hotel. The principal amount of the loan was increased to $7,000,000.00 in June of 1989. Accordingly, NationsBank now holds a first mortgage on all the real and personal property of the Hotel.

Debtor failed to make the regular monthly interest payment due on May 15, 1991, as well as all subsequent payments. Due to such defaults, NationsBank accelerated the loan and demanded full payment. Absent the default, the loan was due to mature on September 21, 1991.

The Hotel is also subject to a second mortgage held by Essex Franchise Systems, Inc. ("Essex"). The sum due on the second mortgage is approximately $493,000.00.

On November 12, 1991, debtor filed a chapter 11 petition. No trustee or examiner has been appointed, and debtor continues to operate the Hotel as debtor-in-possession.

Shortly after the filing of the case, debtor and NationsBank entered into a stipulation for the use of cash collateral. It required the debtor to make monthly payments of $30,000.00 to NationsBank. The stipulation was approved by the Court on December 30, 1991. Debtor began making the payments on December 1, 1991, and has not defaulted.

NationsBank contends that as of the petition date, debtor owed $7,041,561.08 on its mortgage. Debtor disputes the precise figure, but concedes that the balance due was at least $6,899,178.79.

The Court has not established a valuation of the Hotel. NationsBank presented evidence that it was $4,000,000.00 as of July, 1991, and $3,650,000.00 as of June, 1992.

On May 18, 1992, debtor filed a plan of reorganization. The plan creates thirteen classes, summarized as follows:

Classes 1–7: priority tax claims—paid in full and unimpaired.

Class 8: NationsBank's secured claim—promissory note secured by first mortgage on Hotel issued for secured amount and calling for monthly payments at 8%

---

1. The motion was originally filed by NCNB National Bank of Florida. However, on December 10, 1992, an order was entered substituting NationsBank of Florida, N.A. for NCNB National Bank of Florida.

amortized over thirty years. Once Class 12 is retired, additional annual payments equal to one-half of net cash available from previous year to be made.

Class 9: NationsBank's deficiency claim—promissory note secured by second mortgage on Hotel issued for deficiency amount and to be paid *pro rata* with Class 10 from net cash available upon retirement of Class 11 claims. No interest to be paid.

Class 10: Essex Franchise Systems, Inc.'s secured claim—promissory note secured by third mortgage on Hotel and to be paid *pro rata* with Class 9 from net cash available upon retirement of Class 11 claims. No interest to be paid.

Class 11: Unsecured claims—paid in full, *pro rata*, with annual payments consisting of net cash available from previous years, beginning January 15, 1993.

Class 12: Unsecured insider claims—pay from net cash available upon retirement of Class 9 and 10 claims.

Class 13: Equity interests of partners—debtor to be owned by new entity and ownership in the entity will be first offered to current partners based on relative contributions to debtor's reorganization.

NationsBank's representative testified at the hearing that the bank will vote both its secured and unsecured claims to reject the plan. The bank also indicated that it will not accept any plan that does not provide either immediate payment in full or immediate transfer of the collateral to the bank.

At the hearing, Essex stated a probable intention to make an election under 11 U.S.C. § 1111(b) to have its claim treated as fully secured.

Subsequent to the hearing on NationsBank's motion to dismiss or convert, debtor filed an amended plan of reorganization. The amended plan adds a class consisting of the executory contract between Howard Johnson Franchise Systems, Inc. and the debtor. The amended plan proposes to modify the contract to provide that the franchise agreement is terminable annually by debtor upon sixty days notice. The amended plan also calls for the additional annual payments on NationsBank's secured (class 8) claim to commence upon the retirement of class 10 claims. Thus, the unsecured insider claims are not paid until class 8 is paid in full. Finally, the amended plan calls for a $15,000.00 *pro rata* contribution by the current owners.

### Conclusions of Law

NationsBank contends that this case should be dismissed or converted based on debtor's inability to effectuate a plan of reorganization. The bank asserts three obstacles to debtor's ability to present a confirmable plan:

1. Its deficiency claim must be classified with the other unsecured claims. Separate classification is an impermissible "gerrymandering" of claims designed to manipulate the vote.

2. Once the classes are properly designated, debtor cannot obtain an affirmative vote of any impaired class.

3. Even if debtor can obtain the affirmative vote of one impaired class, cram-down of the others is not possible because the new value exception does not exist under the Bankruptcy Code. However, if the new value exception is recognized, its requirements have not been met in this case.

Section 1112 governs the conversion and dismissal of chapter 11 cases. The relevant portion upon which NationsBank relies provides:

(b) ... on request of a party in interest or the United States trustee, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter whichever is in the best interest of creditors and the estate, for cause, including—

. . .

(2) inability to effectuate a plan.

Under this section, the Court has wide discretion and must balance the equities to determine what will best serve the creditors and the estate. H.R.Rep. No. 595, 95th Cong., 1st Sess. 405 (1977);

S.Rep. No. 989, 95th Cong., 2d Sess. 117 (1978), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787. The Court must always remember that chapter 11 was designed to provide economically distressed entities with a mechanism for rehabilitating. As one court noted: "A Court should not precipitously sound the death knell for a debtor by prematurely determining that the debtor's prospects for economic revival are poor." *In re Shockley Forest Industries, Inc.*, 5 B.R. 160, 162 (Bankr.N.D.Ga.1980).

The burden to establish grounds for conversion or dismissal under § 1112(b) is on the moving party. *In re Macon Prestressed Concrete Co.*, 61 B.R. 432, 436 (Bankr.M.D.Ga.1986); *In re Economy Cab & Tool Co.*, 44 B.R. 721, 724 (Bankr.Minn. 1984); *In re Karl A. Neise, Inc.*, 16 B.R. 602, 603 (Bankr.S.D.Fla.1981). In addition, given the rehabilitative purpose of chapter 11, all doubts are to be resolved in favor of the debtor. *In re Macon Prestressed Concrete Co.*, 61 B.R. at 436.

Under § 1112(b) NationsBank has the burden of proving that debtor lacks all ability to formulate or realize a plan of reorganization. This section has generally been applied only when the debtor is no more than a corporate shell without a place of business, employees, payroll, or any discernable business activity, *see, e.g., In re Tracey Service Co., Inc.*, 17 B.R. 405, 409 (Bankr.E.D.Pa.1982); or where the debtor proposed numerous unconfirmable plans, *see, e.g., In re Fossum*, 764 F.2d 520 (8th Cir.1985).

In the instant case, NationsBank has failed to prove that the debtor is devoid of any ability to effectuate a plan. The evidence indicates that the debtor has been successfully operating the business and making the $30,000.00 a month adequate protection payments for over a year. Accordingly, the core for a workable plan of reorganization exists.

In addition, debtor's disclosure statement was approved on September 15, 1992, and a confirmation hearing has been scheduled. Given the successful operation of the business to date, any speculation concerning the viability of debtor's plan is premature.

Although NationsBank's arguments may later be accepted, the Court concludes that such matters would be more properly considered at a confirmation hearing.

Accordingly, the Court concludes that at this time the best interests of both the creditors and the estate would best be served by the continuation of this case under chapter 11.