15 F.3d 1089
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 In re SPARKS DIRT PROJECT, a Partnership, Debtor.
SPARKS DIRT PROJECT, a Partnership, Plaintiff-Appellant,
v.
UNITED STATES TRUSTEE; City of Sparks, Defendants-Appellees.
 No. 92-16432.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 13, 1994.
Decided Jan. 24, 1994.
 
 1
 Before: GOODWIN, WIGGINS, and BRUNETTI, Circuit Judges
 
 
 2
 MEMORANDUM*
 
 
 3
 Sparks Dirt Project ("Debtor"), a Chapter 11 debtor, purchased approximately 35.65 acres of land which were divided into two separate parcels of 24.1196 acres and 11.5304 acres. A couple named Bria possessed a lien (deed of trust) on the larger parcel, while a woman named Twaddle possessed a lien (deed of trust) on the smaller parcel. Debtor intended to develop and resell the property. Debtor also owned three other lots upon which Twaddle held a deed of trust.
 
 
 4
 In 1986, the City of Sparks (the "City") imposed and perfected a $315,000 assessment on the 35.65 acres but did not allocate the assessment between the 24 and 11 acre parcels. The City assessed the property as a single city parcel because Debtor owned both parcels. During the next three years, Debtor unsuccessfully attempted to sell the property.
 
 
 5
 Debtor's Chapter 11 bankruptcy case commenced on May 10, 1989. An order for relief was entered on June 7, 1989, and the automatic stay provisions under 11 U.S.C. Sec. 362(a) took effect. The Debtor has since acted as a debtor-in-possession.
 
 
 6
 During the first year of Chapter 11, Debtor tried but failed to sell the property. In early 1990, the bankruptcy court granted the Bria's requested relief from the automatic stay, and the Brias foreclosed on the larger parcel. After the foreclosure, Debtor owned only the smaller parcel and the three other lots.
 
 
 7
 On June 25, 1990, to reflect the fact that after the foreclosure different entities owned the larger and smaller parcels, the City issued two resolutions, whereby it would send the Brias and Debtor separate bills for assessment payments.
 
 
 8
 In August, 1990, the City moved for relief from the automatic stay so it could foreclose on the smaller parcel. Debtor did not oppose the motion. After the bankruptcy court granted the motion, the City foreclosed on the 11 acre parcel.
 
 
 9
 On March 5, 1991, the United States Trustee, later joined by the City, filed a motion for order to show cause why the bankruptcy court should not dismiss the case. Between April and June, 1991, Debtor filed a number of revised disclosure statements and proposed plans for reorganization in which it indicated its intent to file an adversary proceeding against the City based on two assertions: (1) the City violated the automatic stay by its resolutions of June 25, 1990; and (2) the City allocated the assessments incorrectly because it based its allocation on the relative sizes of the parcels instead of on the relative beneficial use of the parcels. Debtor contends that if it wins this lawsuit it will have equity in its property, enabling it to pay its creditors.
 
 
 10
 On July 8, 1991, the bankruptcy court heard the motion to dismiss. On July 22, 1991, the bankruptcy court entered findings of fact and conclusions of law dismissing Debtor's Chapter 11 case and refusing to approve Debtor's plan of reorganization, because it found that Debtor was "unable to present a confirmable Chapter 11 plan, and that further delay is unreasonable and prejudicial to creditors." As to the improper allocation, the bankruptcy court found that the validity of the original allocation was a question of state law, more appropriate for state court. The district court affirmed the dismissal of the case on automatic stay grounds and thus did not decide if other reasons existed for the bankruptcy court to refuse to approve Debtor's disclosure statement and to dismiss the case.
 
 
 11
 We AFFIRM the dismissal of Debtor's case on the grounds found by the bankruptcy court and thus find it unnecessary to reach any automatic stay issues.
 
 
 12
 Under Sec. 1112(b) of the Bankruptcy Code, the court may dismiss a case for cause, which includes, in part, (1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation; (2) inability to effectuate a plan; and (3) unreasonable delay by the debtor that is prejudicial to creditors. 11 U.S.C. Sec. 1112(b)(1)-(3) (1988). The bankruptcy court has wide discretion to determine whether cause exists under Sec. 1112(b), and under its equitable powers, it may consider factors other than those listed in Sec. 1112(b). In re Reichert, 138 B.R. 522 (Bankr.W.D.Mich.1992).
 
 
 13
 Courts have used Sec. 1112(b) to dismiss cases when debtors have no ongoing business operations and no structure of assets. See, e.g., In re Anderson, 52 B.R. 159, 163 (Bankr.D.N.D.1985) (dismissal warranted under Sec. 1112(b)(2) when debtor after two years of bankruptcy was still unable to confirm a plan); In re Ellison Assocs., 63 B.R. 756, 766 (Bankr.S.D.N.Y.1983) ("Inasmuch as debtor had no assets, it is unlikely to form an effective plan of rehabilitation[,]" which warrants dismissal under Sec. 1112(b)(1) and (2).); In re Eden Assocs., 13 B.R. 578, 584 (Bankr.S.D.N.Y.1981) (debtor's "only alleged asset is this property, [and debtor] has no other real creditors and no employees; who has, in short, no ongoing business to reorganize").
 
 
 14
 Courts have also discussed these factors when converting Chapter 11 cases to Chapter 7 cases under Sec. 1112(b). For example, in In re Macon Prestressed Concrete Co., 61 B.R. 432, 436 (Bankr.M.D.Ga.1986), the court, in converting the case to Chapter 7, stated that
 
 
 15
 [i]f it is apparent that the debtor has no profitable core around which to structure a plan of reorganization, if the debtor is faced with continuing loses, and if the debtor's assets are declining in value, the best interests of the creditors may require the court to order liquidation ... In sum, the debtor should be given a fair opportunity to reorganize, but the debtor should not be permitted to continue in a futile effort to reorganize.
 
 
 16
 In In re Stolrow's Inc., 84 B.R. 167 (Bankr. 9th Cir.1988), the BAP referred to factors used to determine if debtors have filed cases in good faith and to consider in motions to dismiss for cause. These factors include whether: (1) the debtor has only one asset; (2) the secured creditors' lien encumbers that asset; (3) there are generally no employees except for the principles; (4) there is little or no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments; (5) there are few, if any, unsecured creditors whose claims are relatively small; (6) there are allegation of wrongdoing by the debtor or its principles; (7) the debtor is afflicted with "the new debtor syndrome: in which a one-asset equity has been created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors; (8) bankruptcy offers the only possibility of forestalling loss of the property. Id. at 171 (citing In re Hulse, 66 B.R. 681, 682-83 (Bankr.M.D.Fla.1986)).
 
 
 17
 In this case, the facts do not support a showing that Debtor filed Chapter 11 in bad faith; however, the facts do show that Debtor has lost control of its principal asset, did not oppose losing the smaller parcel of property, has no business to operate, and is unable to rehabilitate itself. Debtor filed for bankruptcy on May 10, 1989, and was unable to get a plan confirmed or a disclosure statement approved by the time the bankruptcy court dismissed its case on July 22, 1991. Furthermore, Debtor is a partnership that does not operate as a business and only has three non-insider unsecured creditors. Debtor's major assets, the two parcels of property, no longer belong to Debtor, since it lost the larger parcel to the Brias in June, 1990, and the smaller parcel to the City in September, 1990, after an unopposed lift stay motion by the City. Finally, more than two years after filing Chapter 11, Debtor proposed a final plan, which the bankruptcy court refused to approve when it dismissed Debtor's case, and based its reorganization on the threatened lawsuit against the City. Debtor is not time barred from challenging the October 1986 assessment; thus, to prevail in its threatened lawsuit against the City, Debtor must show that the allocation of the assessment occurred in June 25, 1990, when the City revised the assessment after the Bria's foreclosure action, and that the City improperly and illegally allocated the assessment on an equal and pro rata basis.
 
 
 18
 These factors show that Debtor will be unable to effectuate a plan, that its estate has diminished and left Debtor without a reasonable liilitation, and that further delay will prejudice creditors. We, therefore, AFFIRM the bankruptcy court's dismissal of Debtor's case under Sec. 1112(b).
 
 
 19
 AFFIRMED.