In re Frank J. MARKUNES, Debtor.

Georgia J. Markunes
JOHNSON, Movant,

v.

Frank J. MARKUNES, Respondent.

Bankruptcy No. 3–87–01463.

United States Bankruptcy Court,
S.D. Ohio, W.D.

Oct. 9, 1987.

Peter J. Donahue, Dayton, Ohio, for movant.

Claude R. Bowles, Jr., Porter, Wright, Morris & Arthur, Cincinnati, Ohio, for respondent.

## ORDER AND DECISION DENYING MOTION TO DISMISS

WILLIAM A. CLARK, Bankruptcy Judge.

This matter is before the court upon the motion of Georgia J. Johnson to dismiss the chapter 11 case of Frank J. Markunes on the ground that his petition in bankruptcy was not filed in good faith.

### FACTS

On February 5, 1985 movant was granted a divorce from debtor in the Common Pleas Court of Montgomery County, Ohio, Division of Domestic Relations. Under the terms of the "Final Judgment and Decree of Divorce" it was ordered that movant was the owner of the following items:

| | |
|---|---|
| Coin collection | $15,000 |
| Savings account | 10,448 |
| Savings previously withdrawn by Movant | 12,000 |
| Movant's IRA | 2,250 |
| John Hancock tax exempt fund | 3,219 |
| Real property—equity | 55,000 |

Debtor was declared to be the owner of the following property:

| | |
|---|---|
| Kemp Precision Circuits, Inc. Stock | $390,000 |
| His profit sharing account | 87,937 |
| Checking account | 1,338 |
| IRA | 4,311 |
| Cash surrender value of life insurance | 4,703 |

| | |
|---|---|
| 1965 Corvette | $10,000 |
| 1980 Ford van | 6,500 |
| Bass boat | 6,500 |

It was further ordered that debtor was to pay movant by way of property settlement the sum of $206,686 on the following terms:

1. $60,000 on or before thirty days after filing of this Final Judgment and Decree of Divorce;

2. On the one year anniversary date after filing of this Final Judgment and Decree of Divorce, Defendant shall commence a series of payments of $12,000 per year to the Plaintiff on the balance plus interest at the rate of 10% per annum from the date of the Decree; however, when the parties' child shall arrive at the age of 18 years and completes high school, or is earlier emancipated by law, or is no longer Defendant's obligation of support for any reason, then the next ensuing payment thereafter shall be increased to $18,000 plus interest as aforementioned and said annual payments shall continue at that rate each year until the debt is fully paid, it being recognized that the last principal payment may well be less than $18,000 and each of said annual payments shall bear interest at the rate of 10% per annum from the date of filing this Final Judgment and Decree of Divorce;

Further, debtor was required to execute a note to movant in the amount of $206,686 and to deposit all of his shares of stock in Kemp Precision Circuits, Inc. with the Clerk of Courts of Montgomery County, Ohio until the note was paid. In addition, movant was ordered to pay alimony in the amount of $325 per week for a maximum period of two years.

On April 30, 1986 a referee for the domestic relations court issued a report recommending that the debtor be found in contempt for failure to pay the property division payments and be sentenced to ten days in jail. The relevant portions of that report are as follows:

Pursuant to the property division payments due under the February 5, 1985

decree, the Defendant is presently in arrears $80,000 including interest specified in the decree as of April 5, 1986. He has made none of the payments due under paragraphs 1 and 2 on page 4 of the decree.

He has submitted a detailed summary of his financial condition in his Defendant's Exhibit "A", and considered by the court.

His business relationship with his partner has deteriorated since the decree and his business has decreased 50% since 1984. His 1985 tax return shows an $85,582 gross income from his company.

He has been paying the weekly alimony due.

. . . .

At the time of the divorce the Defendant had a profit sharing plan worth $87,937. He currently shows this to be worth $94,000 in March of 1986. The court concluded on page 5 of its January 11, 1985 decision that the Defendant can borrow against this plan. Further, the Defendant does have assets such as the 1965 Corvette, which could be sold to satisfy a portion of the property division due. He further shows debts in his Exhibit "A" on page 3 in support of his position of inability to pay, however, these debts are largely unpaid to date. His income does exceed his weekly living expenses listed by $132.82 weekly showing a $78,000 gross income even though his 1985 return shows a $85,582.00 gross income from salary.

The Defendant has not paid what he could afford toward this property division, but has paid nothing at all [sic]. The court cannot conclude he can pay nothing over the past 13 months that he has known about this exposure under the decree for property division owed.

I therefore cannot decide this matter contrary to the court's January 11, 1985 decision or contrary to the recent Court of Appeals decision and recommend that the Defendant be found in contempt and sentenced to 10 days in the Montgomery County Jail. . . . (Movant's Exhibit 2)

The debtor objected to the referee's report on May 13, 1986, but Judge Kern of the domestic relations court approved the referee's report on June 12, 1986 and found the debtor in contempt for failure to make payments according to the final judgment and decree of divorce. The debtor was ordered to appear before the court for sentencing on June 24, 1986.

Debtor appealed the judgment sentencing him for contempt to the Court of Appeals for Montgomery County, Ohio, Second Appellate District. The court noted that "[b]y the time of his sentencing on June 24, 1986, Mr. Markunes had paid only $75 of the $80,000 that had, by that time, become due and payable pursuant to the trial court's order." (Movant's Exhibit 4 at 2) The appeals court affirmed the sentencing of debtor and noted that "[t]he trial court evidently did not believe Mr. Markunes' testimony that he was unable to pay the amount ordered and it evidently did not believe his testimony that he was unable to borrow against his company's profit-sharing plan." (*Id.* at 4) "Evidently, the trial court in this case has concluded that Mr. Markunes has failed to meet his burden of proof that he was unable to make the payment ordered." (*Id.* at 5)

On April 30, 1987, Judge Kern ordered debtor to report to the Montgomery County Jail on May 4, 1987 to serve his ten-day sentence. On May 8, 1987 movant filed a motion with the domestic relations court for an additional contempt proceeding. On May 12, 1987 the debtor filed his petition in bankruptcy.

At the hearing on movant's motion to dismiss debtor's bankruptcy case, Mr. Markunes testified that he had no alternative to filing bankruptcy. When questioned about the purpose of his filing he stated that "it was to be able to go on about my life and stay out of prison. I could not come up with the money." Mr. Markunes, who is a 50% stockholder in Kemp Precision Circuits, Inc., stated that Kemp has undergone tremendous losses during the last three or four years and that his salary from the corporation is now $1,000 per week.

With regard to Kemp's Profit Sharing Plan, the debtor and Dennis G. Peterman (also a 50% stockholder of Kemp) are the Plan's trustees. At one point in his testimony Mr. Markunes asserted that there were no loan provisions in the Plan and that borrowing was not permitted. Yet he stated that he attempted to borrow funds from the pension fund, but his request was denied. His testimony about who refused him the loan and the extent of his efforts to obtain a loan was vague and confusing. The Plan contains a provision for applying to the trustee for a loan on page 18. (Movant's Exhibit 8), and states that "[t]he Trustee may grant this loan if he believes it has merit."

In February of 1987 Mr. Markunes transferred a $4,000 IRA to his current spouse. In December of 1986 he gave a 1965 Corvette to his daughter.

The following debts are listed in debtor's schedules:

| | | |
|---|---|---|
| Hunter Savings and Loan | $25,000 | (secured by a mortgage on movant's real estate) |
| Georgia L. Johnson | $206,000 | (property settlement) |
| Gary L. Froelich | $11,334 | (attorney fees) |
| Kemp Precision Circuits | $25,977 | (personal expenses paid by corporation) |
| Diana Markunes | $1,875 | (personal loan) |
| Walter Plattenburg | $1,835 | (CPA fees) |
| Smith and Schnacke | $10,000 | (disputed attorney fees of movant) |

In addition, the debtor listed his Kemp stock as having a value of $75,000. He valued his profit sharing plan at $106,000. On July 16, 1987 the debtor filed an amendment to his schedules claiming that the profit sharing plan is not part of his bankruptcy estate or if it is part of his estate, it may be exempted.

## CONCLUSIONS OF LAW

Movant contends that debtor's petition was not filed in good faith and may, therefore, be dismissed "for cause" under 11 U.S.C. § 1112(b). In support of her position, movant maintains that 1) individuals without a legitimate business purpose are not eligible for chapter 11 relief; 2) the bankruptcy court is not the appropriate forum to resolve a two-party dispute; and 3) chapter 11 is not meant to be used solely as a way to prevent a creditor from enforcing its claim.

At the outset, the court notes that "it is well established that every bankruptcy filing requires the element of good faith." *In re Karum Group, Inc.* 66 B.R. 436, 437 (Bankr.W.D.Wash.1986). In addition, the determination of the presence of good faith requires an examination of all the particular facts and circumstances of each case. *Meadowbrook Investors' Group v. Thirtieth Place, Inc.* (*In re Thirtieth Place, Inc.*), 30 B.R. 503, 505 (Bankr. 9th Cir. 1986).

## I. DEBTOR'S ELIGIBILITY FOR CHAPTER 11

At the present time, decisions from the circuit courts conflict regarding the eligibility of an individual, not engaged in business, to obtain relief under chapter 11. In *Wamsganz v. Boatmen's Bank of De Soto*, 804 F.2d 503 (8th Cir.1986), the debtors received their income from Social Security, pensions, and rental property. Although conceding that the Bankruptcy Code contains no explicit limitation excluding persons not engaged in business from filing under chapter 11, the court held that persons who are not engaged in business may not seek relief under chapter 11 of the Bankruptcy Code. The court's holding was grounded on its reading of the Bankruptcy Code's legislative history, which "taken as a whole, shows that Congress meant for chapter 11 to be available to businesses and persons engaged in business, and not to consumer debtors." (*Id.* at 505).

By contrast, the Eleventh Circuit found "nothing in the current Bankruptcy Code or its legislative history or the prior Bankruptcy Act that would suggest that a consumer debtor may not seek relief under chapter 11." *In re Moog*, 774 F.2d 1073, 1075 (11th Cir.1985). The court noted that "nothing in 11 U.S.C. § 109(d) [1] which iden-

1. "Only a person that may be a debtor under chapter 7 of this title, except a stockbroker or a

tifies debtors eligible for Chapter 11 relief suggests that petitioner is not qualified to be a debtor for Chapter 11 purposes." *Id.*

Of critical importance in the instant matter is whether this court's circuit court of appeals has taken a position regarding the eligibility of consumer debtors for chapter 11 relief. Movant cites *Matter of Winshall Settlor's Trust,* 758 F.2d 1136 (6th Cir. 1985), in support of her position that the debtor is not eligible for chapter 11 relief. In *Winshall* the debtor was a trust which operated a garage. Prior to bankruptcy its garage was foreclosed upon and after the expiration of its period of redemption the garage was sold. The trust then filed a chapter 11 petition for the purpose of setting aside the foreclosure as a voidable transfer. Following a dismissal of its bankruptcy petition by the bankruptcy court, the trust appealed to the district court. Although the district court found that the trust *was* a qualified debtor under 11 U.S.C. § 109(d), it "upheld the dismissal on the ground that Chapter 11 was not intended to be available to *entities* that had *neither assets* nor an ongoing business to protect." *Id.* at 1137. [Emphasis Supplied]. The Sixth Circuit found that "[d]ismissal of the trust's Chapter 11 petition on the grounds stated by the District Court was proper." *Id.*

■ In finding an implied requirement of an "ongoing business" in chapter 11 proceedings, the court reasoned as follows:

Although appellant contends that there is no explicit "ongoing business" requirement to Chapter 11 reorganization, such a requirement is inherent in the statute and clearly implied in 11 U.S.C. § 1112(b). That section permits the court after notice and hearing to "convert a case under this chapter to a case under chapter 7 . . . or . . . dismiss a case under this chapter, . . . for cause, including — . . . (2) inability to effectuate a plan. . . ." To be confirmed, a plan must "provide adequate means for the plan's execution," 11 U.S.C. § 1123(a)(5),

which necessarily requires some means by which the debtor may repay its debts. *Id.*

It is this court's opinion that the Sixth Circuit viewed the existence of an "ongoing busines" simply as evidence of a debtor's capacity to repay its debts, thereby demonstrating the ability to effectuate a plan. In other words, the requirement of an "ongoing business" may be viewed as a shorthand expression for the requirement of being able to repay debts and to effectuate a plan. An individual debtor may demonstrate his ability to repay debts and to effectuate a plan by the existence of sources of income.

In addition, the district court, whose grounds were upheld by the circuit court, found two reasons for dismissing the trust's chapter 11 case: "Chapter 11 was not intended to be available to entities that had neither assets *nor* an ongoing business to protect." *Id.* [Emphasis supplied] Presumably, if the trust had had assets to protect the case would not have been dismissed. The Sixth Circuit found that the only significant assets of the debtor in *Winshall* were contingent assets—a chose in action for a breach of land contract and the possibility of setting aside a foreclosure sale as a fraudulent conveyance. In the instant case, the debtor has stock and a profit sharing plan to protect.

■ In summary, because the Sixth Circuit did not directly address the issue of the eligibility of an "individual" debtor for chapter 11 relief, this court does not read *Winshall* as establishing a clear position with regard to the issue before this court. But to the extent applicable, *Winshall* does not appear to prohibit chapter 11 relief where an individual has significant assets to protect. For these reasons, this court is able to adopt the position announced by the Eleventh Circuit in *In re Moog,* 774 F.2d 1073.

In Section 109 of the Bankruptcy Code, Congress has indicated with particularity

---

commodity broker, and a railroad may be a debtor under chapter 11 of this title." 11 U.S.C.

§ 109(d).

the entities that are not eligible for certain types of bankruptcy relief. This court finds nothing in the legislative history to indicate that Congress did not intend for chapter 11 relief to be available to a consumer debtor. On its face, Section 109(d) permits a consumer debtor to file a chapter 11 petition. There is no doubt that chapter 11 is *primarily* designed for business but a primary purpose does not, of course, imply an exclusive purpose. Because chapter 11 is primarily concerned with businesses, it is not surprising that the legislative history is aimed at business organizations. Further, movant's position would render any consumer debtor, with either debts beyond the debt limitations of chapter 13 or without "regular income," ineligible for any type of reorganization proceeding. This court is not inclined to reach such a result absent clear Congressional intent.

## II. TWO PARTY DISPUTES AND THE PREVENTION OF ENFORCEMENT OF CREDITOR'S CLAIM

■ Movant supports her contention that the debtor has filed his petition in bad faith on the grounds that 1) the bankruptcy court is not the appropriate forum to resolve an essentially two-party dispute, and 2) chapter 11 is not meant to be used solely as a way to prevent a creditor from enforcing a claim.

■ Although "good faith" is inherently required of all bankruptcy petitions, it is an imperfectly defined concept and highly subjective. Both of the factors referred to by the movant are valid indicia of the lack of "good faith,"[2] but it cannot be overemphasized that "[f]rom the emerging case law decided relative to the 'good faith' concept, no one factor has emerged as determinative of good faith." *In re American Property Corp.*, 44 B.R. 180, 182 (Bankr.M.D. Fla.1984). This court is searching for the debtor's honest intention in filing as well as the need and realistic ability to effectuate a reorganization. In addition, the court must determine whether there has been "conduct which is inconsistent with the underlying purposes and contemplation of the reorganization and rehabilitation process and constitutes a perversion of legislative intent." *In re Victory Construction Co., Inc.*, 9 B.R. 549, 558 (Bankr.C.D.Cal.1981).

Quite clearly this bankruptcy case is the result of an intense two-party dispute which began in 1985 and continues to today. As mentioned, bankruptcy courts have displayed a reluctance to take jurisdiction of essentially two-party disputes. Yet, it must be observed that the impetus for many bankruptcy filings is pressure from a single creditor. Also, in the instant case, other creditors do exist, although there has been no evidence introduced as to whether the other creditors have actively sought payment from the debtor.

In her memorandum of law, movant states that "[t]he Debtor ... has filed this Chapter 11 proceeding solely to thwart enforcement of the contempt order mandating that he pay Petitioner the $206,000 settlement owed pursuant to the prior divorce decree." (Doc. 11 at 7). It is unmistakable that the debtor filed his petition to avoid further jail sentences. Were this his *sole* motivation for filing, unaccompanied by an honest intention, a genuine need and a realistic ability to reorganize, this court would be inclined to find "bad faith." However, the evidence at the hearing did not establish that avoidance of a jail sentence was the sole reason for filing. The debtor has suffered a significant decline in income which *at the moment* is impairing his ability to satisfy the terms of the property settlement. With regard to a delay in the enforcement of her claim, it is noteworthy that there has been no evidence that movant has attempted the more traditional methods of debt collection, e.g. levy, attachment, etc.

The problem in using these two criteria as a measure of bad faith is that they are natural incidents of the bankruptcy process. When debtors file bankruptcy petitions, two-party disputes are frequently re-

---

**2.** *See, e.g., Matter of Port Richey Service Co.*, 44 B.R. 634 (Bankr.M.D.Fla.1984); *In re American Property Corp.* 44 B.R. 180 (Bankr.M.D.Fla. 1984); *North Central Development Co. v. Landmark Capital Co. (In re Landmark Capital Co.,* 27 B.R. 273 (Bankr.Ariz.1983)).

solved by this court and creditors are prevented, or at least delayed, from enforcing their normal state law remedies against debtors. In addition, these two factors must be balanced against the basic purposes of bankruptcy. In chapter 11, honest debtors are to be granted relief from creditor pressure and given an opportunity for rehabilitation by proposing and executing a plan.

This court is not persuaded that the existence of a two-party dispute with its concomitant delay of the enforcement of movant's claim constitutes "bad faith" where the debtor has demonstrated that he is in need of a plan of reorganization and has the ability to fund such a plan. Nevertheless, the question is extremely close in the instant matter and although the debtor's filing has not been shown to have been in "bad faith," his conduct has been sufficiently "questionable" so as to warrant the imposition of equitable safeguards to ensure the integrity of the bankruptcy system. Frankly, the debtor's conduct is just short of supporting a finding of "bad faith" and the court has grave reservations concerning the honesty of the debtor's intentions.

The state court found that the debtor refused to discharge his property settlement obligation, even though he had the ability to do so. It is not, of course, within the province of this court to determine the correctness of the state court's assessment. What is of critical concern and importance to this court is the debtor's conduct leading up to the filing of his petition and the inferences that may be drawn from that conduct regarding the debtor's honesty and intention to execute a plan. Based on the evidence before this court, it is simply inconceivable that in two years the debtor was only able to pay a total of $75 toward his property settlment. This conclusion is clearly evidenced by the debtor's transfer of a $4,000 IRA to his current wife and a $10,000 automobile to his daughter, which could have been applied to the property settlement. In addition, the debtor's testi-

mony that he was unable to borrow from his profit sharing plan, over which he had and has one-half of the voting power, was totally unconvincing. Although a refusal to borrow to satisfy debts is not normally a bankruptcy consideration, it is part of the pattern of the debtor's unwillingness to pay the property settlement and casts doubt on whether the debtor honestly intends to propose an equitable plan and carry out the terms of that plan. Finally, it should be noted that although the profit sharing plan was included in the state court calculation of the property division, the debtor claims that it is not part of his bankruptcy estate. The debtor is entitled to take this position, but it causes the court to be wary of an abuse and a perversion of the rehabilitation process. Theoretically, the debtor could propose a plan to pay his debts at a substantially reduced amount (based on liquidation values), obtain confirmation of the plan (thereby obtaining a discharge of the original property settlement), and borrow the money from his profit sharing plan to pay off the plan debts. It is clearly not the function of this court to restructure property settlements so that the debtor may "cash-out" his ex-spouse with assets that were, in substance, previously awarded to her.[3]

To reiterate, the debtor's conduct at this time does not rise to the level of "bad faith," but it is highly "questionable" behavior and causes this court to be skeptical of the debtor's intentions. In the context of chapter 13 cases, the Sixth Circuit has approved an equitable solution when "questionable" conduct occurred prior to filing. In view of the nature of the debtor's chapter 11, that solution appears most applicable here. When the debtor's conduct is questionable, but not shown to be dishonest, the bankruptcy court may require full repayment. *Memphis Bank and Trust Co. v. Whitman*, 692 F.2d 427, 432 (6th Cir.1982). In view of the debtor's *present* financial condition and representations to the court of his intentions, the debtor will be granted an opportunity to propose a

---

**3.** The court does not mean to suggest that this device is in fact contemplated by the debtor. This example is merely used to illustrate the potential for abuse.

reasonable plan. But because of his past conduct, this court will not confirm debtor's plan unless it provides for 100% repayment. This solution should also benefit the movant, who thus far, despite state court contempt proceedings, has been successful in receiving only $75 of the property settlement. If the debtor's plan is confirmed and performed, she will receive all of her claim, though perhaps not during the period of time she had previously contemplated.

For the foregoing reasons, it is ORDERED that the motion of Georgia J. Johnson to dismiss the chapter 11 case of Frank J. Markunes is DENIED.