In re Hugh A. McSTAY, Bertha A. McStay, Debtors.

Bankruptcy No. 87–04662F.

United States Bankruptcy Court, E.D. Pennsylvania.

Feb. 25, 1988.

---

Kurt J. Shaffer, Guerrelli & Witiw, Warminster, Pa., for movants, Frank and Margaret Burke.

Roland J. Christy, Spring House, Pa., for debtors, Hugh A. McStay, Bertha A. McStay.

## OPINION

BRUCE I. FOX, Bankruptcy Judge:

In this contested matter, movants seek dismissal of the debtors' chapter 11 bankruptcy case. Movants argue first that chapter 11 relief is not available to individual debtors not engaged in business and second that the bankruptcy case was not filed in good faith. For the reasons discussed below, I reject both of movants' arguments. I will thus decline to dismiss the case.[1]

### I.

The debtors in this chapter 11 case are Hugh and Bertha McStay ("the McStays"). Bertha McStay is a salaried employee of a large pharmaceutical company. Hugh McStay is unemployed. It is undisputed that the McStays do not presently operate a business of any kind.

The McStays are indebted to the movants, Frank and Margaret Burke ("the Burkes"), by virtue of their purchase in 1981 of 110 shares of the Glenside Delicatessen, Inc. The purchase price was $50,000.00, the consideration for which was a judgment note payable in weekly installments. Apparently, the McStays defaulted on the required payments during 1985 so that in June, 1986, the Burkes confessed judgment on the note in the approximate amount of $20,000.00 including attorneys fees and costs. During 1987, the McStays' state court motion to open the confessed judgment was denied and execution proceedings were begun by the Burkes. Bertha McStay testified that the store was sold in 1985 and that her attorney is holding approximately $14,000.00 in proceeds. An additional sum is being paid by the purchaser to the McStays' attorney on a monthly basis.

Ms. McStay also testified that she and her husband are presently current on their home mortgage, but behind on a car loan and possibly on various tax liabilities. Ms.

---

1. This opinion constitutes the findings of fact and conclusions of law required in this contested matter by Bankr. Rules 7052 and 9014.

McStay candidly admitted that the bankruptcy was filed solely in response to the Burke's collection efforts. She additionally admitted that the schedule of assets filed in connection with the bankruptcy inadvertently failed to include an $8,000.00 retirement fund and the approximately $14,-000.00 being held by her attorney representing proceeds of the sale of the delicatessen.

The Burkes' position is that the bankruptcy must be dismissed because chapter 11 relief is unavailable to individual debtors who do not operate a business.[2] In the alternative, the Burkes request that the case be dismissed because a chapter 11 filed on the eve of execution is in bad faith.

## II.

Courts are divided on whether individual debtors without an ongoing business enterprise[3] are eligible for relief under chapter 11. Two courts of appeals have held that chapter 11 is available. *Gonzales v. Parks,* 830 F.2d 1033, 1034 n. 1 (9th Cir.1987); *In re Moog,* 774 F.2d 1073 (11th Cir.1985). *Accord e.g., In re Greene,* 57 B.R. 272 (Bankr.S.D.N.Y.1986).[4] Two courts of appeals appear to have held to

the contrary. *Wamsganz v. Boatmen's Bank of DeSoto,* 804 F.2d 503 (8th Cir. 1986); *Matter of Winshall Settlor's Trust,* 758 F.2d 1136 (6th Cir.1985).[5] *Accord e.g., Matter of Bendig,* 74 B.R. 47 (Bankr.D. Conn.1987); *In re Stern,* 50 B.R. 285 (Bankr.E.D.N.Y.1985); *In re Ponn Realty Trust,* 4 B.R. 226 (Bankr.D.Mass.1980). *See also Matter of Little Creek Development Company,* 779 F.2d 1068 (5th Cir. 1986) (*citing* Winshall Settlor's Trust with approval).

Upon review of the case law, I find that there is indeed an outstanding dispute about the availability of chapter 11 relief for individual debtors who do not operate an ongoing business. I am persuaded, however, that the plain language of the code, legislative history and relevant policies underlying bankruptcy relief, all support the conclusion that chapter 11 is available to such "consumer debtors".

11 U.S.C. § 109(d), governing who may be a debtor under chapter 11, states:

> Only a person that may be a debtor under chapter 7 of this title, except a stockbroker or a commodity broker and a railroad may be a debtor under chapter 11 of this title.

The purpose of Chapter 11 reorganization is to assist financially distressed business enterprises by providing them with breathing space in which to return to a viable state. *See In re Dolton Lodge Trust No. 35188,* 22 B.R. 918, 922 (Bankr.N.D.Ill.1982). "[I]f there is not a potentially viable business in place worthy of protection and rehabilitation, the Chapter 11 effort has lost its raison d'etre...." *In re Ironsides, Inc.,* 34 B.R. 337, 339 (Bankr.W.D. Ky.1983). Although appellant contends that there is no explicit "ongoing business" requirement to Chapter 11 reorganization, such a requirement is inherent in the statute and clearly implied in 11 U.S.C. § 1112(b). *Winshall Settlor's Trust* at 1137. It is not completely clear that by this language, the Sixth Circuit meant to preclude consumer chapter 11 filings. *Compare In re Lange,* 75 B.R. 154 (Bankr.N.D.Ohio 1987) (consumer chapter 11 cases precluded in Sixth Circuit) *with In re Markunes,* 78 B.R. 875 (Bankr.S.D. Ohio 1987) (not precluded). At least one other court however, has interpreted *Winshall Settlor's Trust* as imposing an ongoing business requirement as a prerequisite to a consumer chapter 11 filing. *Matter of Bendig.*

---

**2.** The Burkes initially moved for dismissal or conversion, but at hearing they made little, if any, case for conversion. However, in view of my determination of the issues involved in this contested matter, conversion would not be appropriate at this juncture in the case.

**3.** In the literature, such individuals are commonly referred to as "consumer debtors".

**4.** Most commentators addressing the issue also conclude that Chapter 11 relief is available to individuals not engaged in business. *See e.g.,* 2 *Collier on Bankruptcy* ¶ 109.04 at 109–21 (15th Edition, 1987) (citing Moog); Herbert, *Consumer Chapter 11 Proceedings: Abuse or Alternative?* 91 Comm.L.J. 234 (1986); Gross, *Preserving a Fresh Start for the Individual Debtor: The Case for Narrow Construction of the Consumer Credit Amendments,* 135 U. of Pa.L.Rev. 59, 113 n. 223 (1986).

**5.** *Winshall Settlor's Trust* involved the bankruptcy of a trust which had operated a parking garage until foreclosure sale of the property. Bankruptcy was apparently filed to set aside the foreclosure sale as a voidable transfer pursuant to 11 U.S.C. § 548. In the course of its opinion, the Sixth Circuit stated:

The definition of "person" is found at section 101(35):

"person" includes individual, partnership, and corporation, but does not include governmental unit, provided, however, that any governmental unit that acquires an asset from a person as a result of operation of a loan guarantee agreement, or as receiver or liquidating agent of a person, will be considered a person for purposes of section 1102 of this title;

The only "persons" defined as ineligible under chapter 7 of the code (and, therefore, chapter 11), are railroads and certain financial institutions. *See also* 11 U.S.C. § 109(g) (excluding certain individuals whose cases had been dismissed during the preceding 180 days).[6] Thus nothing in the express language of the code makes individuals without an ongoing business ineligible to file under chapter 11.[7] *Accord, Moog* at 1075.

That Congress was capable of using section 109 to limit access of certain classes of debtors to particular chapters is illustrated by the provisions of section 109(e) which state:

Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $100,000 and noncontingent, liquidated, secured debts of less than $350,000.00, or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $100,000 and noncontingent, liquidated, secured debts of less than $350,000 may be a debtor under chapter 13 of this title.

If Congress had intended to preclude access to chapter 11 for individuals without

an ongoing business, it could have so stated in section 109(d).

That Congress did not intend to preclude consumer debtors from filing under chapter 11 is also supported by the legislative history. The House Report states:

Chapter 11, Reorganization, is primarily designed for business, but permits individuals to use the chapter. The procedures of chapter 11, however, are sufficiently burdensome that their use will only make sense in the business context, and not in the consumer context.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 6 (1977). *See also,* S.Rep. No. 989, 95th Cong., 2d Sess. 3 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5789, 5968. Both reports explicitly state that chapter 11 is available to individuals. They conclude, however, that the complexity of chapter 11 is such that "consumer debtors" would be discouraged rather than precluded from chapter 11 relief. I see nothing in the code or the legislative history which suggests that a consumer who is undaunted by the complexity of chapter 11 is barred from such relief.

Policy considerations, as well, militate in favor of allowing consumers access to chapter 11. As cited above, 11 U.S.C. § 109(d) limits the availability of chapter 13 relief to those with unsecured debts of less than $100,000.00 and secured debts of less than $350,000.00. If chapter 11 reorganization is unavailable to consumers, reorganization relief would be entirely precluded to those whose debts exceed these defined limits. Given the absence of specific limiting language in the code or legislative history, as well as a Congressional preference for debtors to use reorganization chapters rather than liquidation chapters,[8] I am reluctant to read a requirement into chapter 11 which would result in denial of an oppor-

---

6. The provisions of section 109(g) are not applicable to the case at bench.

7. Similarly, nothing in the express language of chapter 11 makes such individuals ineligible for relief under that chapter.

8. *See* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 118 (1977). *See also, In re Smith,* 77 B.R. 496, 501 (Bankr.E.D.Pa.1987); *In re Macon Pre-*

*stressed Concrete Co.,* 61 B.R. 432, 436 (Bankr. M.D.Ga.1986). Although the legislative history suggests Congressional intent to encourage reorganization under chapter 13, reorganizations are encouraged because they ultimately result in greater payments to unsecured creditors in most cases. That rationale applies to reorganization under chapter 11 as well as chapter 13.

tunity for a class of individual debtors to reorganize. *Accord, In re Markunes,* 78 B.R. 875, 880 (Bankr.S.D.Ohio 1987).

The availability of chapter 11 to individual debtors not operating businesses is highly unlikely to result in large numbers of consumers opting to file under chapter 11 rather than chapter 13. Not only are there higher fees associated with chapter 11 filing *see* 28 U.S.C. § 1930,[9] but also chapter 11, unlike chapter 13, requires filing a disclosure statement, 11 U.S.C. § 1125, permits creditor voting on the provisions of a plan, 11 U.S.C. § 1126, allows creditors to file competing plans upon expiration of the exclusivity period, 11 U.S.C. § 1121, may require application of the absolute priority rule, 11 U.S.C. § 1129(b), and provides for a significantly more limited discharge, *compare* 11 U.S.C. § 1141(d) *with* 11 U.S.C. § 1328(a).

These same provisions generally protect creditors from being disadvantaged by an individual choosing chapter 11 rather than chapter 13.[10] Some advantages which a consumer debtor might obtain by filing under chapter 11 rather than chapter 13 are that there is no five year limit on plan length, *compare* 11 U.S.C. § 1322(c), and that one may pay priority claims to taxing authorities over six years rather than five, *compare* 11 U.S.C. § 1129(a)(9)(C) *with* 11 U.S.C. § 1322(c). Given the difficulties which a debtor is likely to have in obtaining confirmation of a plan of greater than five years, *see e.g.,* 11 U.S.C. § 1129(a)(10), it is highly unlikely that debtors will opt for chapter 11 to the disadvantage of creditors.

I thus see no equitable justification for dismissing a chapter 11 petition on the basis that the debtors do not operate a business even where, as here, a debtor who may be eligible for chapter 13 instead opts for chapter 11.

### III.

The Burkes' motion to dismiss for lack of good faith must also be denied. The Burkes argue and the McStays admit that the bankruptcy was filed almost solely to frustrate the Burkes' effort to execute on a confessed judgment.

I will not reiterate here my discussion of the history of the application of the good faith requirement to chapter 11 filings contained in *In re Clinton Centrifuge, Inc.,* 72 B.R. 900 (Bankr.E.D.Pa.1987) *appeal pending.* As I stated in that case, however,

My review of the case law convinces me that the application of the good faith doctrine to a particular chapter 11 filing cannot be based upon a rigid utilization of specific factors, particularly those which focus on the debtor's prepetition conduct. In enacting chapter 11, Congress determined that an otherwise eligible debtor is entitled to an opportunity to reorganize; the Code's policy is one of open access to the bankruptcy process. *See In re Johns–Manville Corp.,* 36 B.R. [727] at 735–37 [ (Bankr.S.D.N.Y.1984) ]. At the same time, Congress built procedural and substantive protections for creditors into the bankruptcy process. *E.g.,* 11 U.S.C. §§ 305, 362(d), 363(c), 1112(b), 1121(b), (c), 28 U.S.C. § 1334(c). In engrafting the good faith requirement into the Code, courts must be careful not to upset the delicate balance of interests fashioned by Congress under chapter 11. Moreover, to the extent that the concept of good faith exists independent of other Code provisions (such as adequate protection), courts must be vigilant to apply this concept in ways consistent with the legislative policy decisions embodied in these other statutory enactments. Thus, in evaluating a debtor's good faith, the court's only inquiry is to determine

---

**9.** It costs $90.00 to file under chapter 13 as opposed to $500.00 to file a non railroad chapter 11. Additionally, a minimum quarterly fee of $150.00 is now required under chapter 11. 28 U.S.C. § 1930(a)(6).

**10.** Although nothing in the record in this matter establishes that the McStays would have been ineligible for chapter 13 relief, the relative dis-

advantages for a consumer filing under chapter 11 persuade me that there need be no requirement that consumer reorganizations proceed, if possible, under chapter 13. Moreover, I note the provisions of 11 U.S.C. § 1112(d) preclude conversion of a chapter 11 case to chapter 13 except on request of the debtor.

whether the debtor seeks to abuse the bankruptcy law by employing it for a purpose for which it was not intended. When a debtor is motivated by plausible, legitimate reorganization (or liquidation) purposes and not solely or predominantly by the mere desire to prevent foreclosure or hinder creditors, bad faith is not present in a chapter 11 case.[11]

■ In determining whether a bankruptcy filing is in good faith, a court must be careful to distinguish the "good faith" prerequisite to confirming a plan, 11 U.S.C. § 1129(a)(3), from the "good faith" inquiry into the debtors' motivation for filing bankruptcy. *See Matter of Madison Hotel Associates,* 749 F.2d 410, 425 (7th Cir.1984). For the purposes of the inquiry into the debtors good faith upon filing, the relevant issues for a determination on good faith are whether a debtor's filing is "consistent with a legitimate reorganization purpose and ... based on economic reality." *Clinton Centrifuge* at 906. *See In re Smith,* 77 B.R. 496, 500–01 (Bankr.E.D.Pa.1987). A deeper inquiry into the debtors' intentions as to treatment of individual creditors is not possible until a plan is filed and inquiry under 11 U.S.C. § 1129(a)(3) is made. In the case at bench, I find that the debtors are using the bankruptcy process for an appropriate purpose and could potentially propose a confirmable plan.

■ In and of itself, filing to frustrate the execution efforts of one particular creditor is not an illegitimate bankruptcy purpose. *In re Corey,* 46 B.R. 31 (Bankr.D. Haw.1984); *In re Alton Telegraph Printing Co.,* 14 B.R. 238 (Bankr.S.D.Ill.1981). Nothing in the Code precludes bankruptcy as an alternative for those with few or even one creditor. *See In re March,* 83 B.R. 270 (E.D.Pa.1988). It is quite common and not inappropriate for a debtor to·use chapter 11 to obtain a respite from a creditor or creditors aggressively seeking to collect on a debt, even when execution is imminent, provided that financial rehabilitation is possible. *In re Greene,* 57 B.R. 272, 275 (Bankr.S.D.N.Y.1986). *See In re Warner,* 30 B.R. 528 (Bankr. 9th Cir.1983). Indeed, that is one of the underlying purposes which the bankruptcy process, by virtue of the automatic stay, was meant to serve. *See Matter of Levinsky,* 23 B.R. 210 (Bankr.E.D.N.Y.1982); *In re Spenard Ventures, Inc.,* 18 B.R. 164 (Bankr.D.Alaska 1982). The case relied upon by the Burkes, *In re Albany Partners, Ltd.,* 749 F.2d 670 (11th Cir.1984) does not hold to the contrary. In that case the court found lack of good faith in a filing on the eve of foreclosure sale because "the debtor had no realistic chance of successfully reorganizing". *Albany Partners* at 674.

■ In the case at bench, the McStays have significant assets, including more than $14,000.00 cash in an escrow account and an $8,000.00 retirement fund [12] with which to pursue a plan of reorganization. I am thus unable to find at this early stage of the case that they do not have the potential to propose a confirmable plan under chapter 11.

■ I will thus deny the Burkes' motion to dismiss.[13] An appropriate order will be entered.

---

11. *See generally,* Klee, *Ignoring Congressional Intent: Eight Years of Judicial Legislation,* 62 Am.Bankr.L.J. 1 (Winter, 1988).

12. To the extent, if any, that assets were not properly disclosed in the debtors' filing, the debtors must of course, amend their schedules. Because the debtors candidly admitted that certain assets were inadvertently omitted from their statement of assets, I do not find their nondisclosures to be additional evidence of bad faith. *Compare, Albany Partners* (information affirmatively concealed may contribute to a finding of bad faith).

13. The Burkes did not prosecute their motion to convert and thus appear to have abandoned it. However, because the McStays' chapter 11 filing is not precluded by law and was made in good faith, I will deny the Burkes' motion to convert at this time.