In re Charles Clinton PARSONS, Debtor.

In re LAW OFFICES OF CHARLES C. PARSONS, P.C., Debtor.

Bankruptcy Nos. 91–00695, 91–00700.

United States Bankruptcy Court, District of Columbia.

Feb. 27, 1992.

Richard H. Gins, Gins & Seeber, P.C., Washington, D.C., for debtor.

Hugh Latimer, Kim Heebner Price, Pepper, Hamilton & Scheetz, Washington, D.C., for William Reback.

## DECISION RE: MOTION TO DISMISS FILED BY WILLIAM REBACK

S. MARTIN TEEL, Jr., Bankruptcy Judge.

Under the court's consideration are the Motions to Dismiss Chapter 11 Case filed by William Reback ("Reback") on the grounds that the debtors' petitions were filed in bad faith. The court finds that the debtors' petitions were filed for the sole purpose of obtaining a stay of execution pending the appeal of a district court decision awarding Reback summary judgment. While the court believes that the filing of a petition in order to stay the execution of a judgment may be appropriate in certain cases, the court finds that under the facts in this case the filing of the petitions was not an appropriate use of the bankruptcy court. Accordingly, the court will grant Reback's motions and order that the Chapter 11 petitions filed by the debtors be dismissed.

## FACTS

The debtors in these related cases are Charles Clinton Parsons ("Parsons") and the Law Offices of Charles C. Parsons, P.C. (the "debtor law firm").[1] The debtor law firm is the successor to the two-man law firm formerly known as Reback & Parsons, P.C. The parties' relationship began in 1975 when Reback invited Parsons to share office space rented by Reback. In 1977, Reback invited Parsons to join his law practice, which consisted primarily of personal injury cases. Parsons, who is roughly 25 years younger than Reback, had little experience in personal injury practice at that time. In June of 1989, Reback retired from the law firm and subsequently brought a suit against Parsons and his law firm to recover retirement benefits under a written employment agreement.

The district court found that Reback had established his entitlement to retirement benefits under the employment agreement. Memorandum and Opinion of April 15, 1991. On June 24, 1991, the district court entered a judgment against Parsons and his law firm in favor of Reback and on

---

1. This statement of facts is largely drawn from the district court's decision in *William Reback v. Charles Parsons, et al.,* Civil Action No. 90–0348, 1991 WL 329753 (D.C. April 15, 1991). For purposes of its decision, the district court accepted the defendants' version of the facts. The court takes judicial notice of the district court's decision, which was filed as Exhibit A to Reback's motions to dismiss.

June 27, 1991 the district court entered an amendment to that judgment. The district court awarded Reback delinquent payments in the amount of $300,057.60 as of June 27, 1991, plus prejudgment interest in the amount of $18,373.51, and monthly payments in the amount of $12,500 through June 1999. Parsons filed an appeal from the amended judgment and filed separate Chapter 11 petitions for himself and for his law firm on July 1, 1991.

On December 20, 1991, Reback filed motions to dismiss in both cases on the grounds that the petitions were filed in bad faith, arguing that the debtors have no intention of reorganizing.[2] In their opposition to the motions to dismiss, the debtors admit that the petitions were filed for the purpose of staying execution of the district court judgment, and that they do not intend to file plans of reorganization until the appeal is determined. The debtors state that a discharge will not be necessary if the appeal is successful, but in the event the district court's judgment is affirmed, either a liquidating plan or conversion to Chapter 7 may be appropriate.

### DISCUSSION

There is a split of authority on the issue of whether a debtor may in good faith file a bankruptcy petition in order to stay the execution of a judgment where the debtor is unable to obtain a supersedeas bond. *See, In re Ford,* 74 B.R. 934 (Bankr. S.D.Ala.1987) and cases cited therein. The debtor claims that the great weight of authority recognizes the propriety of resorting to Chapter 11 protection to prohibit dismantling of an estate by a judgment creditor pending appeal, citing *In re Alton Telegraph Printing Co.,* 14 B.R. 238 (Bankr.S.D.Ill.1982); *In re Corey,* 46 B.R. 31 (Bankr.Hawaii 1984); *In re Clinton Centrifuge, Inc.,* 72 B.R. 900 (Bankr. E.D.Pa.1987); *In re Ford,* 74 B.R. 934

(Bankr.S.D.Ala.1987); and *In re McStay,* 82 B.R. 763 (Bankr.E.D.Pa.1988). However, the court finds these cases distinguishable.

In *In re Alton Telegraph,* 14 B.R. at 241, and *In re Ford,* 74 B.R. at 938, the fact that the debtor had actually filed a plan of reorganization was a factor relied upon by the courts in determining that the debtor was not pursuing a Chapter 11 petition in bad faith. Here, the debtors have not filed any plans of reorganization. While a plan of reorganization had not been filed in the other cases cited by the debtors, the courts found that there were creditors besides the judgment creditor with claims against the estate. *In re Clinton Centrifuge,* 72 B.R. at 908; *In re Corey,* 46 B.R. at 33; *In re McStay,* 82 B.R. at 764. The only general unsecured creditor listed in the schedules filed by the debtors in this case, other than Reback, is Parsons' attorney, in the district court litigation, who is shown as having a $0.00 claim. That attorney subsequently filed a proof of claim for $5,351.10 in both cases. The Internal Revenue Service has filed a non-dischargeable priority claim of $96,285.76 in Mr. Parsons' case and there are some secured claims. Thus, the only general unsecured claim besides Reback's is the debtors' attorney's claim which is *de minimus* in comparison to Reback's. More importantly, in none of the foregoing cases did the debtors state that they did not intend to file a plan of reorganization until the appeal had been resolved.

The debtors argue that the possibility of filing a liquidating plan is an indication of a good faith filing of the petition, and state that "it is impossible to propose a meaningful plan prior to determination of the appeal, absent utliization [sic] of the cumbersome claims estimation process." The debtors claim that until the appeal is determined, it is impossible to know how Reback's claim should be treated. But in a

---

**2.** Reback also claims that the debtor fraudulently manipulated the bankruptcy estates by attempting to place assets outside the reach of creditors. However, no evidence supporting these allegations was placed into evidence by counsel for Reback. In fact, aside from the admissions of the debtor in responding to the motions, the only evidence offered by counsel for Reback at the hearing on his motions to dismiss is the district court's opinion and the debtors' petitions, Statements of Financial Affairs and Monthly Operating Reports. The court has additionally taken judicial notice of proofs of claims filed in the cases.

claims estimation proceeding the court would be required to give *res judicata* effect to the district court's ruling in Reback's favor, unless that ruling were reversed on appeal. There would be nothing cumbersome about it. Once the claim amount is fixed, its treatment under a plan flows from the provisions of 11 U.S.C. § 1129.

Further, the debtors state that there is no requirement that a plan be filed at a particular time. While the debtors are correct that there is no requirement that a plan be filed at a particular time, 11 U.S.C. § 1112(b)(3) provides that a case may be dismissed for an unreasonable delay by the debtor that is prejudicial to creditors. Under 11 U.S.C. § 1129(a)(7), an impaired creditor is entitled to receive property of a value as of the effective date of the plan that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 on such date. By delaying the filing of a plan of reorganization until the appeal is determined, the debtors are unreasonably delaying the effective date of any plan and thereby unreasonably deteriorating Reback's rights under § 1129(a)(7). No interest will be allowed on Reback's claim during the post-petition pre-confirmation period. While that rule makes sense when reorganization is imminent, the rule works an injustice when a plan is delayed just because the debtor wants to await the outcome of an appeal. Further, the court finds that such a delay is particularly prejudicial to Reback who is elderly and trying to recover retirement income.

The debtors also urge that if Reback's judgment is given effect, Reback will put the debtors out of business. If the debtors' estates have going concern value, Reback likely has an incentive not to arbitrarily destroy that value outside bankruptcy. Inside bankruptcy, he likely has the same incentive and would negotiate a plan that preserved the going concern value. The intervention of the chapter 11 case does not deprive Reback's judgment of its validity and he (and other creditors) ought to be allowed to negotiate with the debtor over the terms of a plan. But by delaying filing a plan, the debtors are dodging the need to negotiate with Reback. It is no answer that Reback could file his own plan because that would impose burdens on him—filing a disclosure statement for example—that the debtors, already having knowledge of their affairs, can carry out more cheaply. The debtors ought not be allowed to use these cases as a mere tactic to stall the necessity to negotiate with Reback.

The court believes that a bankruptcy petition can be used as a stay device as long as the debtor is honestly committing its assets to the court's supervision. That the debtors have not in good faith committed their assets to the court's supervision in these cases is demonstrated by the debtors' admission that a discharge will be unnecessary if their appeal is successful. To hold a single creditor at bay while an appeal is pending, without any intention to file a plan before the appeal is resolved, is not an appropriate use of the bankruptcy court. Accordingly, the court concludes that the petitions filed by Parsons and his law firm were filed in bad faith and should be dismissed. The court will not allow the debtors to engage in bankruptcy cases that are mere shams to achieve a stay they are unable to afford outside bankruptcy.